## MISSOURI, K. & T. RY. CO. et al. v. TRUSKETT.

(Circuit Court of Appeals, Eighth Circuit. October 27, 1900.)

No. 1,366.

1. CARRIERS—DELAY IN TRANSPORTATION OF STOCK—MEASURE OF DAMAGES.

In an action against a railroad company to recover damages for an alleged unreasonable delay in the transportation of cattle, it is not error to take as the basis for computation of damages the difference in the market price of the cattle in the market to which they were being shipped, where their destination was known to the defendant, although its contract covered their transportation only over its own line, and their delivery to a connecting carrier for the remainder of the shipment.

2. EVIDENCE—COMPETENCY OF EXPERT WITNESSES—MARKET VALUE OF CATTLE.

Stockmen who for 10 years have been engaged in shipping and selling cattle in the principal markets, and are familiar with the grading of cattle

therein. and with prices as given in the market quotations, are competent to testify to the value in such markets at a given time of a particular shipment of cattle, of whose quality and condition they had personal knowledge.

3. CARRIERS—DELAY IN TRANSPORTATION OF STOCK—DEFENSES.
A railroad company cannot be exonerated from liability for an unreasonable delay in the transportation of stock on the ground that a heavy dew rendered the track slippery and impeded the progress of the train; such an occurrence being an ordinary one, against the effect of which it was the duty of the company to provide.

4. APPEAL—AFFIRMANCE—STATUTORY DAMAGES.
The provision of Mansf. Dig. § 1311 (Ind. T. Ann. St. 1899, § 813), adopted and in force in the Indian Territory, which requires an appellate court, upon the affirmance of a judgment for the payment of money, which has been superseded, to award against the appellant 10 per cent. damages on the amount superseded, is obligatory on the United States court of appeals for the Indian Territory.

5. CARRIERS—DAMAGES FOR DELAY IN SHIPMENT—INTEREST.
An action against a railroad for delay in the transportation of stock, by reason of which the shipper suffered damage, is one for breach of contract, and interest is recoverable on the amount of the loss from the time compensation therefor was demanded.

In Error to the United States Court of Appeals in the Indian Territory.

Clifford L. Jackson, for plaintiffs in error.
S. M. Porter, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This action was brought more than eight years ago by H. A. Truskett, the defendant in error, against the Missouri, Kansas & Texas Railway Company, one of the plaintiffs in error, to recover damages incident to an alleged unreasonable delay in the transportation of about 180 head of cattle from Stevens Station, in the Indian Territory, to Paola, Kan. The case did not reach a trial in the lower court until four years after the action was instituted, when it resulted in a verdict and judgment in favor of the plaintiff below for the sum of $893.66. The assignment of errors is very voluminous, embracing, as it does, 47 specifications of error. But many of the specifications are not noticed in the briefs, and no notice will be taken by this court of those which have been practically abandoned by failing to argue them.

In the course of the trial below there was some controversy at first as to whether the cattle were shipped to Chicago, Ill., by way of Paola and Kansas City, in pursuance of a verbal contract between the carrier and the shipper, or from Stevens Station, in the Indian Territory, to Paola, in pursuance of a written contract. It is conceded that the delay of which complaint is made occurred between the last-mentioned points on the line of the defendant's road. Before the last-mentioned controversy was determined by the trial court, some evidence had been introduced tending to establish an oral agreement for the transportation of the cattle to Chicago; and some evidence had also been introduced as to the market value of the cattle at Chicago, Ill., at the time when they should have ar-

rived. Complaint is made in the first instance because the plaintiff below was permitted to introduce any evidence as to the market value of the cattle in Chicago. Before the trial in the lower court was concluded that court ruled definitely, and so charged the jury, that the cattle were in fact transported by the carrier in pursuance of a written contract binding it to transport them to Paola, and it accordingly withdrew from the consideration of the jury all the evidence which had been introduced tending to show an oral agreement for the transportation of the stock to Chicago. When it came to instruct the jury as to the quantum of damages, it advised them "that in arriving at the amount of such damages they must not consider any evidence as to the market value of the cattle at Chicago, Ill., unless they should find from the evidence that the cattle were to be shipped to and sold only in that market; but if the jury should find from the evidence that the cattle were to be shipped to and sold only in Kansas City, Missouri, they must confine themselves to the evidence with reference to the markets and value of the cattle at that place." As heretofore stated, the evidence clearly showed that the delay in transporting the cattle of which complaint was made occurred wholly on the defendant's line of road, before they had reached Paola; and the theory of the court in giving the instruction aforesaid appears to have been that, although the contract of the carrier only called for the transportation of the stock to Paola, yet, if there had been unreasonable delay in reaching the latter point, and the carrier knew when it received the stock that the cattle were destined to Chicago, and were to be there sold, the market value of the stock at the latter place at the time they would have arrived but for the unreasonable delay on defendant's road might be considered in assessing the damages. We are of opinion that this view of the case was correct, and that no error was committed in admitting testimony relative to the value of the cattle in Chicago, inasmuch as the jury were advised that such testimony must be ignored unless the cattle were destined to be sold in that market only. There was testimony in the case which had a strong tendency to prove that the plaintiff intended to market his stock in Chicago, and that the carrier was advised of that fact. On the other hand, there was no testimony tending to show that Paola was a cattle market, and that the shipper expected to sell the cattle at that place. In view of the evidence, it is obvious that he either intended to sell the cattle at Kansas City or Chicago, and the carrier was doubtless well advised of that fact when it received them for transportation. Under these circumstances, we think that the trial court properly admitted evidence of the market value of the cattle both at Kansas City and Chicago, and properly advised the jury that in assessing the damages the market value thereof should be considered at that place where the shipper contemplated selling them when he made the contract for their transportation. If the defendant company was guilty of an unreasonable delay in transporting cattle over its own road, which it knew were destined to the Chicago market, it cannot complain of the introduction of evidence

tending to show what was their market value at the latter place at the time when they would have arrived but for its own neglect.

The admissibility of the evidence in relation to the market value of the cattle at Chicago is challenged for another reason; that is to say, because the plaintiff below held the stock at Kansas City for one day after its arrival at that point before forwarding the same to Chicago. It is said that he had no right to detain the stock for an unreasonable length of time at an intermediate point, if he intended to market the stock at Chicago, and then charge the loss incident to a decline in prices to the defendant company. This proposition may be conceded as sound law, and so the trial court instructed the jury, telling them, in substance, that, if the plaintiff desired to market his cattle in Chicago, he had no right to delay them in Kansas City in order to test the market there, and then charge to the defendant any fall in the market price at Chicago while the cattle were so delayed at Kansas City. The fact seems to be that owing to the unusual time consumed in transporting the cattle from Stevens Station to Paola, Kan., they were very much in need of rest, feed, and water when they reached Kansas City, and had to be detained for some time before they could be prudently forwarded to Chicago. Exactly how much time was necessary to give them the needed rest and care the evidence does not disclose. The time consumed was not so long as to justify a court in holding, as a matter of law, that by reason of the delay all evidence as to the decline in the market value of cattle at Chicago was inadmissible. We think that the jury were properly allowed to decide how far the plaintiff had disabled himself from charging the defendant with the loss incident to the decline in the market price of cattle at Chicago by the length of time the stock had been detained at Kansas City.

It is next urged that neither the plaintiff below nor his brother should have been permitted to testify as to the market value of the cattle either at Kansas City or Chicago. This objection is founded upon the assumption that they were not sufficiently acquainted with the value of cattle at either of those places, or the condition of the market thereat, to express an opinion as experts. We are not able, however, to assent to this proposition. These witnesses, according to the testimony, had had fully 10 years' experience in handling and shipping cattle. They had shipped cattle repeatedly during that period to the Kansas City market, and were familiar with the different grades of cattle, and had made it their business, like other stockmen, to keep themselves posted as to the value of different grades of cattle by consulting the market reports and conferring with commission men who were engaged in buying and selling stock in each of the aforesaid markets. They had far more knowledge concerning the value of cattle than is possessed by the average individual, and for that reason they were entitled to express an opinion on the various points concerning which they were interrogated, namely, as to the market value of such stock as theirs on various days in July, 1892, after it was shipped, and as to the extent to which their cattle had shrunk in weight and value as a result of hard usage on the

train, and also as a result of the unusual delay in transporting them. The cross-examination which these witnesses underwent to demonstrate their incompetency to testify on these points did not, in our judgment, establish their incompetency, but, at most, only tended to detract somewhat from the weight which should be accorded to their statements.

Some testimony was adduced in the course of the trial which tended to show that during the night following the receipt of the cattle the defendant's track between Stevens Station and Paola, Kan., was rendered slippery by a heavy dew, which impeded the movement of the train, and occasioned the delay of which the plaintiff complains. On the strength of this testimony the defendant company asked the court to declare that if the train was delayed by a heavy dew, and the jury so found, there could be no recovery. Error is assigned because of the refusal of this instruction. We apprehend, however, that a common carrier of freight or passengers is bound to provide engines of sufficient weight and power to overcome the effects of a heavy dew, and that, if an unreasonable delay in the transportation of property or persons ensues from such an ordinary event as the fall of a heavy dew, it cannot shield itself from liability by the plea that its default was attributable to an act of God. A carrier must exercise enough diligence to overcome the effects of a dew falling upon its track, no matter how heavy the precipitation may be. It is only one of those ordinary manifestations of the power of nature against the effects of which human foresight may and should provide.

It is finally claimed that an error was committed by the trial court in allowing interest on the amount of the recovery from August 3, 1892, which, as we infer, was the date when a claim for damage was preferred, and that the court of appeals in the Indian Territory erred in adding a penalty of 10 per cent. upon the theory that the appeal was frivolous or vexatious. Concerning the penalty that was imposed by the court of appeals, it is quite sufficient to say that it was incumbent on that court to award the penalty on the affirmance of the judgment below, by virtue of section 1311, Mansf. Dig. (section 813, Ind. T. Ann. St. 1899), as this court held in Railroad Co. v. Elliott (C. C. A.) 102 Fed. 96. And, concerning the allowance of interest by the trial court, it is to be observed that, as this action was brought to recover damages for a breach of the implied contract of the carrier to transport the cattle over its road with reasonable celerity, we perceive no reason why the actual loss which was sustained by the shipper as far back as July, 1892, should not bear interest from the date when the claim for damage was preferred. Nothing short of the actual amount of such loss, and interest thereon from the time it was demanded, will fully compensate the shipper for the breach of the agreement, and he is entitled to full compensation. In an action against a common carrier for failure to transport property in accordance with its contract, the general rule is to allow as damages the value of the property, with interest upon such value from the time when it should have been delivered, if it is not delivered at all. Railroad Co. v. Estill, 147 U.

S. 599, 622, 13 Sup. Ct. 444, 37 L. Ed. 292, and cases there cited. When the property is delivered by the carrier, but a loss has ensued to the shipper from a failure to deliver it within a reasonable time, no reason is perceived why interest on the amount of the loss may not also be allowed from the time compensation for the loss is demanded. In actions of pure tort, which do not sound in contract, as where the property of a third party is destroyed or injured through the negligence of a carrier, the usual practice is, as this court said in Eddy v. Lafayette, 4 U. S. App. 247, 252, 1 C. C. A. 441, 49 Fed. 807, to leave the allowance of interest on the damages which may be assessed to the sound discretion of the jury. But, as the case at bar is founded upon a breach of contract, it may well be distinguished from the case last cited.

No other questions have been argued in behalf of the plaintiff in error which we deem it profitable to discuss. The case was tried somewhat irregularly, but all of the irregularities appear to have been waived by the action of the parties, and it is too late to challenge them in this court. Finding no error in the record, the judgment below is affirmed.