### GARDNER v. MID-CONTINENT GRAIN CO.
No. 13647.

Circuit Court of Appeals, Eighth Circuit.
June 16, 1948.

Charles M. Miller, of Kansas City, Mo., for appellant.

Solbert M. Wasserstrom, of Kansas City, Mo. (Philip L. Levi, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and STONE, Circuit Judges.

JOHNSEN, Circuit Judge.

Mid-Continent Grain Co., as consignee, sued the trustee of the Alton Railroad Co., under 49 U.S.C.A. § 20(11), for damages from delay in some shipments of soybeans. On a trial without a jury, the court gave a judgment for the Grain Co., and the trustee has appealed.

Three carloads of soybeans are involved, made as separate shipments, on through bills of lading, from Decatur, Indiana, to Kansas City, Missouri. The Pennsylvania Railroad Co., as initial carrier, transported the cars from Decatur to Chicago, and the Alton Railroad Co., as delivering carrier, transported them from Chicago to Kansas City.

The first car was delivered by the shipper to the Pennsylvania at Decatur on October 31, 1944, and it reached Chicago that night. The other two cars were delivered to the Pennsylvania on November 1, 1944, and they reached Chicago by the following morning.

The bills of lading contained a provision, "Stop in Chicago, Ill. for inspection,"[1] and the Pennsylvania gave notice

---

[1] The bills of lading of only two of the cars actually contained the specific "stop" provision quoted above. The third simply contained a notation, "Inspection allowed", but no contention is made, nor did the trial court hold that it was improper to have stopped this car at Chicago for inspection, the same as the other two. In any event, the consignee knew from the report of its Board of

of arrival on all three of the cars to the Illinois State Grain Inspection Department at Chicago on November 3, 1944. That Department made an inspection of each car by sample tests on November 4, 1944, and on the same day it notified the Joint Agency of the Railroads at Chicago that it had completed its inspections. The Pennsylvania allowed the three cars to stand in its yards at Chicago until November 17, 1944, when it turned them over to the Alton for hauling to Kansas City. They arrived in Kansas City on November 20, 1944.

When the soybeans were examined by the consignee after their arrival, the contents of all three cars were found to have rotted and spoiled. The consignee refused to accept them, and the Alton was obliged to dump them as valueless. Before shipment, the soybeans had been in storage in a warehouse at Decatur, whose roof had burned, and the soybean bin had been subjected to water used in putting out the fire. Most of the soybeans in the bin were subsequently sold at Decatur, but those here involved were part of the final salvage debris and were being sent to Kansas City for reconditioning from the fire and water damage.

The trial court made findings that "a reasonable time for the transportation of each of the (three) cars from Decatur, Indiana, to Kansas City, Missouri, via Chicago, with a stop at Chicago for inspection, was seven days"; that the soybeans in each car, at the time the cars were delivered to the Pennsylvania by the shipper at Decatur, were in a damp condition such as would cause them to begin heating in a closed car within two or three days and would result in their rotting in a week to ten days thereafter if they were not aired and dried; that the inspection report of the Illinois State Grain Inspection Department at Chicago on the first car showed that the soybeans were of distinctly low quality, were musty and heating, had a moisture content of 18.3 per cent, and were damaged in excess of 8

per cent; that the report on the second car showed those beans similarly were of distinctly low quality, had a moisture content of 20.3 per cent, and were damaged in excess of 8 per cent; that the report on the third car likewise showed that those beans were of distinctly low grade, were musty and heating, had a moisture content of 18.8 per cent, and were damaged in excess of 8 per cent; that copies of these inspection reports were given by the Illinois State Grain Inspection Department to the Joint Agency of the Railroads at Chicago, as agent of the carrier, and the Pennsylvania thus "had notice of the condition of the contents of all (three) cars at Chicago"; that under these circumstances the delay of the Pennsylvania in allowing the cars to stand in its Chicago yards until November 17, 1944, before turning them over to the Alton, constituted negligence; that such negligence was in the situation a proximate cause of the loss of the soybeans to the consignee; that if the soybeans had been transported and delivered within a reasonable time it would have been possible to have reconditioned them; and that if the soybeans had been thus reconditioned they would have been salable and would have had a reasonable market value, after deducting the costs of reconditioning, in the amount for which the consignee was given judgment.

It is a matter of common knowledge, of course, of which we may take judicial notice, that ordinary soybeans are not perishable goods and that they will not rot and spoil from being in a grain car for such a period as was here consumed in their transportation from Decatur to Kansas City. Admittedly, only the unnatural dampness of these soybeans from the water of the fire caused them to rot and spoil in the grain cars within that time. And clearly, the result is not one that reasonably could be said to have been capable of being anticipated, either generally or specifically, by anyone who was without knowledge of the special condition of the beans.

Trade representative at Chicago that the Pennsylvania had assumed that the consignee wanted all three cars stopped for the purpose of having an inspection made. The record shows that the consignee's purpose in having the stop and inspection was to try to sell the soybeans on the Chicago Board of Trade, if possible. The soybeans failed to come within any regular market grade.

▇ It is the general rule that "damages recoverable for delay in transportation must be such as might reasonably have been contemplated by the parties at the time the contract of carriage was made * * *."[2] 10 C.J., Carriers § 456, p. 315. "One reason for this rule is that the party undertaking the delivery is held to assume, when he makes his contract, a liability only for those damages which would, in the usual and ordinary course of things, result from his failure to perform, because it is only these that he is required to foresee. * * * Another reason for requiring the notice (of circumstances calling for prompt transportation) is to give the carrier an opportunity to protect itself by special precaution against delay in transportation, or to enable it to decline the shipment if by reason of unusual conditions it cannot transport promptly." 13 C.J.S., Carriers, § 229, page 451.

▇ While it usually is said that only such damages can be recovered for delay in transportation as may reasonably be regarded as having been within the contemplation of the parties at the time the contract of carriage was made, liability in relation to special circumstances has some times been recognized on the basis of notice to the carrier after the transportation has commenced. See Am.Jur., Carriers § 517, p. 737, 738; 13 C.J.S., Carriers § 229b. Without regard to whether such a subsequent notice is capable of increasing the liability of a carrier in contract, it would seem that a failure to act, in relation to certain special circumstances at least (such as the condition of the soybeans in the present case), after notice at a time and under conditions that reasonably would enable the carrier to act to prevent or diminish damages, might make it possible to convert the action into one of tort for negligence.

▇ It must be borne in mind, however, that failure to transport with reasonable dispatch is under ordinary circumstances only a breach of the contract of carriage, and that the right to damages in such a situation is limited by the rule which has been set out above. 9 Am.Jur., Carriers § 509, p. 730; Missouri, K. & T. R. Co. v. Truskett, 8 Cir., 104 F. 728, 44 C.C.A. 179, affirmed 186 U.S. 480, 22 S.Ct. 943, 46 L.Ed. 1259. Nor can the scope of the damage right be extended by purporting to cast such a mere failure to move goods with reasonable dispatch as an action for negligence. Cf. Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948. Some additional element of duty owed from knowledge of special circumstances and not acted upon, or some other act done or omitted to be done in relation to the property, beyond simple delay in transportation in an ordinary situation, is necessary to give rise to a right of recovery in negligence.

In the present case, therefore, the failure of the carrier to have transported the soybeans to Kansas City before the expiration of the ten or twelve days' period, in which the court found that they would spoil because of their special condition, would not make the carrier liable for their spoiling (such as might perhaps be the situation generally in the case of perishable goods as a matter of contemplated damages) if the carrier had no notice of the special condition of the soybeans, so as to impose upon it a duty to act in relation thereto.

The effect of what we have said is, we think, recognized in the trial court's findings, but it was the court's view that a duty in relation to the special condition of the

---

[2] Cf. on contract damages generally Restatement, Contracts § 330: "In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." A Special Note to the section adds: "Injuries that an ordinary person would expect to follow the breach of a particular contract are often described as being the 'natural' result of the breach. Such a person would assume the circumstances to be those that have usually existed in similar cases within his experience. As so used, natural means merely that which accords with the common experience of ordinary persons. The circumstances that they would assume to exist and the harm that they would expect to follow are said to be natural. The damages recoverable for such harm are sometimes described as 'general' and all other damages as 'special'."

beans had been imposed upon the carrier from notice to the Pennsylvania at Chicago. As indicated above, the court found that a copy of the Illinois State Grain Inspection Department's report was furnished to the carrier's agent at Chicago and, on the basis of this fact, with its indicated need for prompt transit, and of the existence of a reasonable opportunity thereafter to have made such transportation, the court concluded that the failure of the carrier to have taken such action under these conditions and thereby to have prevented the spoiling of the beans was negligence in the circumstances.

■ If the evidence supported the finding as to the carrier's notice and knowledge of the condition of the beans, the judgment would, we think, be entitled to be affirmed. On the record before us, however, the court was in error as to the carrier's agent having been furnished a copy of the State Grain Inspection Department's report at Chicago. The evidence shows to the contrary that the inspection result was noted by the State Inspector on only two of the three copies of the arrival notices—the original and the duplicate; that the original, together with the samples of the beans taken from the cars, was sent to the consignee's representative on the Chicago Board of Trade; that the duplicate was retained by the State Grain Inspection Department for its files; and that only the triplicate copy was sent to the Joint Agency of the Railroads and nothing was put upon this copy except a notation to advise the carrier that the inspection had been completed.

The head of the Chicago office of the State Grain Inspection Department, who was the consignee's witness, specifically stated, "We make no other report to the railroad, except that on the arrival notice is shown the time of the inspection, whether before or after 11:00 a. m. each day." And that the carrier's agent never saw the reports on the original notices of arrival was also made clear by the consignee's representative at Kansas City, who testified that these original arrival notices "were delivered by the Illinois State Grain Inspection Department to Lamson Brothers and Company (the consignee's representa-

tive on the Board of Trade) in Chicago, who in turn forwarded them to us."

The consignee's brief argues that it would be entitled to be found that the carrier nevertheless had notice of the condition of the beans, because (1) the station agent of the Pennsylvania at Decatur knew that the warehouse from which the beans were being shipped had been subject to a fire, and (2) the bags of sample beans taken by the Illinois State Grain Inspection Department from the cars were returned to the carrier's agent from the Board of Trade, when it was found impossible to sell the beans on the day's market. These naked facts without more would seem a bit tenuous as a basis for a finding of notice, but it is possible that they may be subject to further development on another trial. In any event, their significance is not a matter for our present consideration, since they are not included in and have not been accorded any effect by the findings of the trial court.

What we have said above requires that the judgment in favor of the consignee be reversed and the cause be remanded for a new trial.

■ The carrier has argued that no basis could possibly exist in the situation on which to hold it liable on a theory of negligence. But subsequent notice to the carrier of the special condition of the soybeans, if capable of being proved on a new trial, under such conditions as reasonably to indicate to it the need for prompt transportation and with a reasonable opportunity on its part to have avoided material delay thereafter, could have imposed upon it the duty to act in relation to the special condition, such that its failure to avoid any unnecessary delay thereafter might be found in the circumstances to have constituted negligence.

■ The carrier has attacked other findings of the court as being without competent evidence to support them. Thus it is contended that there is no support for the finding that "A reasonable time for the transportation of each of the (three) cars from Decatur, Indiana, to Kansas City, Missouri, via Chicago, with a stop at Chicago for inspection, was seven days."

824

Various factors, however, as a basis for arriving at a judgment were before the court. It was shown, for example, that another car of this same lot of soybeans, which was not involved in the present case, had been transported from Decatur to Kansas City in six days. The length of time which it actually had taken to haul each of the cars involved from Decatur to Chicago and from Chicago to Kansas City, once they were put into transit, was shown. The general condition of the Chicago yards was shown, as well as the facilities and opportunity for transfer from the Pennsylvania to the Alton yards. The time necessary for having the inspection made by the Illinois State Grain Inspection Department was shown. There was opinion evidence by an expert that the normal movement of freight from Decatur to Kansas City, with a stopover at Chicago for inspection, ought not to require more than about seven days. There were other circumstances also in the evidence, which we need not detail, but which the court was entitled to take into account in arriving at a judgment. All of this evidence together clearly was sufficient as a basis for the court to find as a fact what was a reasonable time for making the transportation under the circumstances. Doubtless the court could have found that a longer time than seven days would have been reasonable in view of the wartime congestion of the Chicago yards, but that is not the question here. Its finding as to the seven day period can not be said to be clearly erroneous on the evidence, and that is as far as our right of inquiry goes.

■ Complaint has been made of the admission of the testimony of the expert witness referred to above, on what was a reasonable time for making the transportation, as well as on other questions. We have examined the foundation for the witness' testimony on each of the questions covered by him, and it can not be said that it was not sufficient to permit the trial court to exercise its discretion to receive it and to thereafter determine its probative force.

■ It further has been argued that it was error to have admitted expert testimony as to the meaning of a certain tariff. The objection made to the testimony was that the tariff "is already in layman's language" and "speaks for itself" and "there is nothing ambiguous about it." But even if, as appellant contends, the testimony was unnecessary and improper as an explanation of the tariff, its admission would clearly not be reversible error, for the case was being tried to the court without a jury, the tariff itself was in evidence, and the presumption would be that the court had considered only the competent evidence and ignored all the incompetent evidence in arriving at its judgment. Thompson v. Baltimore & O. R. Co., 8 Cir., 155 F.2d 767.

What has previously been said, as well as the disposition being made of the case, makes unnecessary any discussion of the contentions of error in the denial of appellant's requested findings.

■ The final contention urged is that the trial court erred in allowing interest as part of the recovery. Interest may be allowed as compensation for delay in paying the damages from delay in transportation, under the Carmack Amendment, 49 U.S.C. A. § 20(11), whether the technical form of the action is in contract or tort recovery. Cf. Missouri, K. & T. Ry. Co. v. Truskett, 8 Cir., 104 F. 728, 733, 44 C.C.A. 179, affirmed 186 U.S. 480, 22 S.Ct. 943, 46 L.Ed. 1259; Lehigh Valley R. Co. v. State of Russia, 2 Cir., 21 F.2d 396, certiorari denied 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432; Thomas v. National Delivery Ass'n, D.C.Pa., 24 F.Supp. 171. And, under Federal Rules of Civil Procedure, rule 54 (c), 28 U.S.C.A. following section 723c, the court may allow such interest even though no demand has been made therefor in the complaint.

For the reason which has previously been given, the judgment is reversed and the cause is remanded generally for a new trial.