United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 9, 2003**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

_____

m 02-40264

_____

TEXAS A&M RESEARCH FOUNDATION,

Plaintiff-Appellant-
Cross-Appellee,

VERSUS

MAGNA TRANSPORTATION, INC.,

Defendant-
Third Party Plaintiff-Appellee-
Cross-Appellant,

VERSUS

ITALIA LINE,

Third Party Defendant-Appellee-
Cross-Appellant,

NAVAHO SHIPPING AGENCY, INC.,

Third Party Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before SMITH and BARKSDALE, Circuit Judges, and DUPLANTIER,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

Plaintiff Texas A&M Research Foundation ("TAMRF") sued defendant Magna Transportation, Inc. ("Magna"), for damages suffered from the late delivery of specialized ocean research equipment. Magna, in turn, sought indemnification from third-party defendants Italia di Navigazione, S.p.A ("Italia"), and Navajo Shipping Agency, Inc. ("Navajo"). The district court held Magna, Italia, and Navajo jointly and severally liable to TAMRF but denied certain items of damages as unreasonable and unforeseeable. All but Navajo appeal.

I.

TAMRF is a private, non-profit corporation that, under contract with the Joint Ocean-ographic Institute, Inc., conducts a research program known as the Ocean Drilling Program. TAMRF maintains a research vessel, the *Joides Resolution*, which conducts deep water drilling into the ocean floor in six annual, two-month-long cruises, or legs, that are planned at least eighteen months in advance by lengthy consultation and preparation. Once the research projects for a given leg are approved and the scientists selected to conduct the experiments, special equipment must be assembled and shipped to a port where it can be loaded on the *Joides Resolution*. Each shipment is time sensitive, because port time is expensive and steals time from research.

A new hammer device specifically designed to penetrate the earth's crust was to be tested on Leg 179. The crew and equipment were to meet the vessel in Capetown, South Africa, in early April 1998. TAMRF selected Magna to arrange for the transport of the necessary equipment. Magna contacted Navajo, which had a direct contract to arrange booking for Italia, and obtained a rate for shipment on the *M/V Morelos*, Voyage 17. On February 3, 1998, Magna entered into a contract with TAMRF to arrange shipment of the cargo for arrival in Capetown by March 23, 1998. Magna had worked with TAMRF and was aware of the time-sensitive nature of the delivery.

Magna, in turn, contracted with Navajo for the carriage of TAMRF's cargo, which consisted of a flatrack and two containers. Navajo engaged Italia to carry TAMRF's cargo. The result of this string of contracts was an arrangement for TAMRF's equipment to be shipped on the *Morelos*, Voyage 17, which was scheduled to sail from Houston in late February 1998, and was estimated to arrive in Capetown on March 23.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

On February 20, 1998, Navajo issued a bill of lading to Magna certifying that TAMRF's cargo had been loaded on the *Morelos*, Voyage 17; the *Morelos*, Voyage 17, departed Houston on the same day. On two separate occasions, Navajo confirmed that the cargo had sailed on the *Morelos*. When TAMRF's personnel flew to meet their cargo in Capetown, however, they were able to locate only the flatrack and not the two containers.

TAMRF's agent in Capetown informed Magna that the containers were missing, and Magna eventually contacted Italia, which replied that the containers were at sea aboard the *Morelos*, Voyage 18. The containers had not even been loaded until April 1998, after their scheduled arrival in Capetown. Before TAMRF's discovery that its cargo was missing, Italia had made no effort to inform any party that the cargo had not been shipped aboard Voyage 17.

After learning its containers were aboard Voyage 18, TAMRF requested that the containers be discharged in Miami, Florida, and then Valencia, Spain, but Italia refused to offload the containers. The *Morelos* continued on to La Speiza, Italy, where TAMRF's personnel met the cargo and placed the most essential equipment into a single container for air shipment to the island of Reunion. From there, TAMRF's personnel chartered a small freighter to carry the container and attempted a midsea rendezvous with the *Joides Resolution*. Because of rough seas, the attempt failed, and none of the equipment was transferred to the research vessel.

## II.

TAMRF sued Magna, alleging breach of contract and fraudulent misrepresentation. Magna brought in Navajo and Italia as third-party defendants pursuant to FED. R. CIV. P. 14(c). After a short bench trial,[1] the district court found the defendants jointly and severally liable, decided that TAMRF had failed to offer any evidence of damages, and invited a motion to reopen the record.

After TAMRF made, and the district court granted, the motion to reopen, TAMRF submitted affidavit and documentary evidence of certain expenses it had incurred, allegedly as a result of defendants' conduct. The court considered the additional evidence and altered its judgment, awarding TAMRF damages of $49,057.97[2] but disallowing various consequential damages because they were unforeseeable and thus unrecoverable.

All parties except Navajo appeal.[3] TAMRF appeals the denial of its consequential damages and the refusal to award attorneys' fees. Magna and Italia appeal the calculation of damages. Italia challenges the assessment of liability.

## III.

Italia contends that it is immune from liability and, in the alternative, that the district court erred as a matter of law in imposing joint and several liability. As an initial matter, how-

---

[1] The court heard testimony from a single witness, after which it informed the parties that it would conduct the trial on written submissions. No party objected to this procedure, and we make no comment on its propriety.

[2] The damages awarded included amounts spent to return various portions of the cargo to Houston and travel expenses for Pat Thompson, a TAMRF employee attempting to ensure proper delivery of the cargo.

[3] Navajo filed an answer but, without explanation, did not appear at trial.

ever, we conclude the court improperly applied rule 14(c) in holding Italia and Navajo directly liable to TAMRF. Because the court abused its discretion in imposing such liability, we need not address Italia's other arguments with respect to this issue.

After being sued by TAMRF, Magna joined Italia and Navajo as third-party defendants. TAMRF took no steps to assert claims against the third-party defendants. Yet, in its final order, the district court purported to realign the parties, allowing TAMRF to proceed directly against Navajo and Italia.

Rule 14(c) governs third-party practice in admiralty proceedings and, in some circumstances, allows a plaintiff to proceed directly against third-party defendants. The rule provides that "the defendant . . . may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the [defendant as third-party plaintiff]." Magna exercised that option, filing a third-party complaint seeking indemnification from Italia and Navajo.

The rule additionally states that "the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event . . . the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." This clause is inapplicable here, however, because Magna's third-party complaint did not demand judgment against Navajo and Italia in favor of TAMRF. Instead, Magna sought indemnification from Italia and Navajo for any sums it was required to pay TAMRF.

Courts have taken a lenient approach in determining whether a third-party plaintiff has

"demanded judgment" in favor of the plaintiff such that the plaintiff may then pursue its action directly against the third-party defendants.[4] This case, however, does not involve inapt phrasing in a complaint that was nonetheless intended to invoke the direct suit provision of rule 14(c).

To the contrary, Magna's third-party complaint entirely fails to meet the substantive requirements of that provision. Nowhere does it request that Italia and Navajo be held liable directly to TAMRF; in the absence of such a request, there was no basis for TAMRF to recover directly from them under rule 14(c). Consequently, the district court erred in finding Italia and Navajo directly liable to TAMRF, although they are potentially liable to Magna for any amounts expended in satisfaction of a judgment in favor of TAMRF.

## IV.

In its initial findings of fact and conclusions of law, the district court concluded that, although TAMRF had established defendants' liability, it "inexplicably ha[d] provided no evidence to support a finding of damages . . . ."[5]

---

[4] *See*, *e.g.*, *Royal Ins. Co. v. Southwest Marine*, 194 F.3d 1009, 1018 (9th Cir. 1999) (holding that third-party complaint permitted original plaintiff to recover from third-party defendants where complaint explained the third-party defendants' direct liability to plaintiffs and repeatedly referred to rule 14(c)); *Riverway Co. v. Trumbull River Servs., Inc.*, 674 F.2d 1146, 1154 (7th Cir. 1982) (where third-party complaint cited rule 14(c) and demanded that third-party appear and answer the complaint).

[5] TAMRF disputes the accuracy of this finding, contending that evidence of damages was provided by Richard McPherson, the only live witness heard
(continued...)

4

Accordingly, the court invited TAMRF to move to reopen the record for submission of evidence on damages. TAMRF made, and the district court granted, such a motion seven days later. All damages awarded were based on the additional evidence submitted by TAMRF pursuant to that order.

We review for abuse of discretion the decision to reopen the record.[6] "[T]he extent of the court's discretion to reopen the case and to consider [additional] materials depends, in the first instance, on the particular Federal Rule of Civil Procedure under which the motion arises." *Lavespere*, 910 F.2d at 173. A motion filed after judgment requesting that the court reconsider its decision in light of additional evidence constitutes either a motion to "alter or amend" under FED. R. CIV. P. 59(e) or a motion for "relief from judgment" under FED. R. CIV. P. 60(b). *See id.*

"Under which Rule the motion falls turns on the time at which the motion is [filed]. If the motion is [filed no later than] ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is [filed] after that time, it falls under Rule 60(b)." *Id.* Here, the motion was filed seven days after the entry of the initial order, so we we treat it as a motion to alter or amend under rule 59(e).

"Because Rule 59(e) is not subject to the limitations of Rule 60(b), the district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under the former rule." *Id.* at 174. In exercising this broad discretion, the court should consider four primary factors: "(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was available to plaintiffs [prior to the entry of judgment], and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened." *Ford*, 32 F.3d at 937-38 (citing *Lavespere*, 910 F.2d at 174).

The first and third factors cut against granting the motion to reopen. TAMRF offers no substantial explanation for its failure to submit, before judgment, the documentary and affidavit evidence proffered after the record was reopened. Further, there is no allegation that this evidence was not freely available before entry of the initial judgment. Unlike a rule 60(b) motion, however, a rule 59(e) motion need not "make any particular showing of inadvertence or excusable neglect."[7] Therefore, even if these factors weigh against TAMRF's request to reopen, they are not determinative. *See Ford*, 32 F.3d at 938.

The second and fourth factors, by contrast, weigh heavily in favor of TAMRF. Although the district court already had established defendants' liability, its judgment left TAMRF without any recovery. Evidence of damages

---

[5](...continued)
from in the case. McPherson did testify as to damages, most or all of which were denied even after the record was supplemented.

[6] See *Ford v. Elsbury*, 32 F.3d 931, 937-38 (5th Cir. 1994); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air. Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc)).

[7] *Ford*, 32 F.3d. at 938; see also *Lavespere*, 910 F.2d at 174 ("[T]o reopen a case under Rule 59(e) on the basis of evidentiary materials that were not timely submitted, the mover need not first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect . . . .").

5

was obviously of critical importance. In addition, the defendants did not suffer any unfair prejudice from the reopening. The affidavit and invoice testimony overlapped substantially with McPherson's testimony, to which the defendants did not object at trial; they were therefore already aware of most of the damages claimed. Further, the additional damages identified in the supplemental filings took the form of expenses actually incurred by TAMRF.

Defendants' position is that TAMRF's expenses are not recoverable as damages, but defendants never have argued that these expenses were not incurred. Essentially, defendants were not unfairly surprised by the evidence, which did not directly relate to their principal arguments against recovery. Consequently, defendants were not unfairly prejudiced by evidence of the expenses. Taken together, these factors establish that the district court did not abuse its discretion in inviting and granting the motion to reopen.

## V.

As part of its submission on damages for the reopened trial record, TAMRF introduced McPherson's affidavit, which described in detail various expenses TAMRF had incurred purportedly in connection with the defendants' failure timely to deliver the cargo to Capetown. The six-page affidavit was accompanied by 329 pages of documents detailing TAMRF's expenses. The district court admitted it as a business record affidavit with respect to most of the documented charges; the court excluded, as speculative, that portion of the affidavit discussing damages for "lost ship time." Both parties challenge the treatment of the affidavit. We review evidentiary rulings for abuse of discretion. *Green v. Adm'rs of Tulane Educ. Fund*, 284

F.3d 642, 660 (5th Cir. 2002).

## A.

Italia and Magna contend that the invoices submitted with McPherson's affidavit are inadmissible under FED. R. CIV. P. 37(c)(1), which provides that a party cannot offer, at trial, documents that have not been disclosed in accordance with FED R. CIV. P. 26.[8] Rule 37(c)(1) provides that a party who fails to disclose such information "shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). We review for abuse of discretion a decision not to exclude documents under rule 37. *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998).

In evaluating whether a violation of rule 26 is harmless, and thus whether the district court was within its discretion in allowing the evidence to be used at trial, we look to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *See id.*

Although TAMRF failed to explain its failure to disclose, the prejudice to the adverse parties was negligible, because the witness in support of whose testimony the invoices were offered had been designated properly as a wit-

---

[8] Presumably, Magna contends that TAMRF should have disclosed the documents pursuant to rule 26(a)(1)(B) or (C), which requires a party to disclose, respectively, documents relevant to disputed facts in the proceedings or documents on which damages computations are based.

ness before trial. Further, any prejudice was cured by the approximately one month during which Italia was allowed to examine and respond to the contested evidence. The district court did not abuse its discretion in admitting the documentary evidence supporting the affidavit.

### B.

Magna contends the McPherson affidavit is hearsay not admissible under any exception. The district court, however, concluded that the affidavit was admissible as a business record affidavit, which requires only that the affiant have "personal knowledge to testify as custodian of documents" and "personal knowledge as to some of the statements in the affidavit." *FSLIC v. Griffin*, 935 F.2d 691, 702 (5th Cir. 1991).

The affidavit states that part of McPherson's duties as vice-president of TAMRF included the management of all records and documents pertaining to the Ocean Drilling Program and that such records are kept under his custody and control. The district court also reasonably concluded that, as vice-president of the foundation, McPherson had personal knowledge as to some of the statements in the affidavit.[9] Italia's principal argument is that McPherson lacked personal knowledge of certain of the facts in the affidavit. This argument is meritless, because personal knowledge of all the contents of a business record affidavit is not required. *See id*; 4 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES

---

[9] This conclusion is particularly appropriate in light of the fact that most of the statements in the affidavit relate to the payment of various expenses related to the program over which payment Mc-Pherson had final approval authority.

OF EVIDENCE MANUAL § 803.02[7][d] (Lexis-Nexis 8th. ed. 2002). Consequently, the district court did not abuse its discretion in admitting the affidavit as a business record.

### C.

The McPherson affidavit included, in its list of expenses, $132,239 related to lost ship time. This entry reflects the cost of chartering the *Joides Resolution* for the three days during which the hammer experiment was to have been performed, but during which no research was done because of defendants' failure to deliver the necessary equipment. The district court excluded that portion of the affidavit, concluding that it was inadmissible as improper or speculative lay opinion testimony.

"Under [FED. R. EVID.] 701, 'a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the [fact finder].'"[10] "In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Id.* Accordingly, rule 701 does not preclude testimony by business owners or officers on matters that relate to their business affairs.[11] Indeed, an officer or employee of a corporation

---

[10] *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (quoting *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997)).

[11] *Id.*. at 373-74 (allowing corporation's director of risk management to testify to lost profits, and collecting cases from other circuits holding likewise); 3 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 701.03[7], at 701-20 through 701-21 & Supp. 2002 (Lexis-Nexis 8th ed. 2002).

may testify to industry practices and pricing without qualifying as an expert. *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003). McPherson's testimony, similarly, is based on particularized knowledge based on his position as vice-president of the research foundation.[12]

In any event, the lost ship time charges set forth in the affidavit do not constitute opinion testimony of any kind. As with the other documented expenses, the amount established for lost ship time is an amount actually paid by TAMRF. The figure was not derived from McPherson's opinion as to the value of lost ship time, as the district court phrased it, but rather was established according to precise contractual terms.

Because the ruling rested on a misinterpretation of rule 701, the exclusion of the lost-ship-time portion of the affidavit was an abuse of discretion.[13] But, "[this court] will not reverse erroneous evidentiary rulings unless the aggrieved party can demonstrate 'substantial prejudice.'" *Viazis v. Am. Ass'n*

*of Orthodontists*, 314 F.3d 758, 767 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 2078 (2003). As we explain, TAMRF is not entitled to recover expenses related to the cessation of research activity aboard the *Joides Resolution* and thus was not prejudiced by the exclusion of this evidence.

VI.

In its supplemental order on damages, the district court denied recovery for two broad categories of expenses incurred by TAMRF: expenditures related to TAMRF's own attempts to deliver part of the delayed shipment to the Joides Resolution;[14] and costs incurred in reliance on defendants' commitment to deliver the cargo by the appointed date.[15] In its findings of fact, the district court acknowledged that TAMRF had incurred these expenses but held them to be unforeseeable and thus unrecoverable as consequential damages. TAMRF argues that the expenses were reasonable and necessary to salvage critical research.

We review *de novo* legal conclusions underlying an award of damages. *Harken Exploration Co. v. Sphere Drake Ins. PLC*,

---

[12] Although rule 701 was amended in 2000 to prohibit lay witnesses from offering opinions based on "scientific, technical or other specialized knowledge within the scope of Rule 702 [expert evidence]," the court in *Tampa Bay Shipbuilding*, 320 F.3d at 1222-23, thoroughly reviewed the advisory committee notes accompanying the 2000 amendment and concluded that the amendment did not place any restrictions on the preamendment practice of allowing business owners or officers to testify based on particularized knowledge derived from their position.

[13] *See United States v. Buck*, 324 F.3d 786, 791 (5th Cir. 2003) (noting that district court abuses discretion where decision to admit evidence is based on error of law).

[14] These expenditures include the $98,000 spent to airlift part of the cargo to Reunion Island and $38,962.90 to charter a vessel for the attempted mid-sea rendezvous with the *Joides Resolution*.

[15] TAMRF's reliance costs include items such as the $7,465.60 spent to outfit the *Joides Resolution* for the scientific experiments that could not be performed. TAMRF also spent $2,325 to feed and $24,796.16 to pay the crew intended to perform those experiments. The most significant reliance expenditure, however, was the roughly $140,000 spent to secure use of the *Joides Resolution* for the three days during which the hammer experiment was to have been performed.

261 F.3d 466, 477 (5th Cir. 2001). In the absence of legal error, the award of damages is a finding of fact reviewed for clear error. *Tyler v. Union Oil Co.*, 304 F.3d 379, 401 (5th Cir. 2002). So, "[i]f the district court's factual findings are plausible in light of the evidence presented, this court will not reverse its decision even if this court would have reached a different conclusion."[16]

That TAMRF actually incurred the disputed expenses is uncontroverted; the only issue is whether it is entitled to recover them as consequential, or "special," damages, which are those unusual or indirect costs that, although caused by the defendant's conduct in a literal sense, are beyond what one would reasonably expect to be the ordinary consequences of a breach.[17] As a general rule, special damages are not recoverable in an action for breach of contract. *See id.* Instead, to recover special damages, a plaintiff must establish that the defendant "had notice of the special circumstances from which such damages would flow."[18] Accordingly, a carrier is liable for special damages caused by an unreasonable and unnecessary delay in the transportation of goods only if it has notice of the special circumstances leading to those damages.[19]

The question is therefore whether Magna had reason to know that untimely delivery of the cargo would cause the special damages suffered by TAMRF. The district court implicitly held that Magna lacked knowledge of the special circumstances surrounding the shipment, concluding that neither the significant costs TAMRF incurred in its attempts to secure an alternative means of delivery nor those incurred in reliance on the agreed-on delivery date were "foreseeable." The foreseeability of damages is a fact question we review for clear error.[20]

Judging from the findings of facts, Magna had sufficient notice of the special circumstances surrounding the cargo that it can be held liable for special damages resulting from TAMRF's attempts to secure an alternate

---

[16] *Id.* (citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996)).

[17] *See Contempo Metal Furniture Co. v. E. Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981) ("Special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made.").

[18] *Id.* (citing *Ill. Cent. Gulf R.R. v. S. Rock, Inc.*, 644 F.2d 1138, 1141 (5th Cir. May 1981)); *see also Gardner v. Mid-Continent Grain Co.*, 168 F.2d 819, 822 (8th Cir. 1948) ("It is the general rule that damages recoverable for delay in transportation must be such a[s] might reasonably have been contemplated by the parties at the time (continued...)

[18](...continued)
the contract of carriage was made" (citation and internal quotation marks omitted)).

[19] *See Alpine Ocean Seismic Survey, Inc. v. F.W. Myers & Co.*, 23 F.3d 946, 948 (5th Cir. 1994) (holding carrier not liable for cost of replacing microorganisms killed as a result of late delivery, in part because it had no knowledge of the contents of containers and therefore could not have reasonably foreseen the need to collect replacements from the ocean floor); *see also Contempo*, 661 F.2d at 765; *Hector Martinez & Co. v. S. Pac. Transp. Co.*, 606 F.2d 106, 109 (5th Cir. 1979); *Ill. Cent. R.R. v. Horace Turner Corp.*, 9 F.2d 6, 7 (5th Cir. 1925).

[20] *Cf. Hector Martinez*, 606 F.2d at 110; *King v. Otasco, Inc.*, 861 F.2d 438, 444 (5th Cir. 1988).

means of delivering the cargo. The court found that "Magna was aware of the time-sensitive nature of the delivery of [the] equipment." In addition, Dana Holcomb, Magna's president, admitted knowing the purpose of the Ocean Drilling Project.

Further, Magna had worked with TAMRF on several time- and place-sensitive deliveries and was aware that, in this case, TAMRF had arranged alternate shipping dates to ensure timely delivery. Although a general awareness that harm could result from any untimely delivery does not justify an award of consequential damages,[21] Magna had actual notice of the importance to TAMRF of timely delivery. Therefore, the district court clearly erred in holding these expenses to be unforeseeable.

The special damages resulting from TAMRF's reliance on its contract with Magna raise more difficult questions of foreseeability. The $7,465.60 TAMRF spent outfitting the *Joides Resolution* for the hammer experiment was foreseeable, even given Magna's limited knowledge of the particulars of the Ocean Drilling Project. Magna should reasonably have known that certain costs would be incurred in preparing for research dependent upon the cargo and that those expenditures would be wasted in the event Magna failed to deliver the shipment in time.

With respect to the remainder of the expenses sought to be recovered, however, the district court did not clearly err. Based on its superficial knowledge of the purposes and methods of the research project, Magna could not reasonably have expected that a failure to deliver TAMRF's cargo would render the *Joides Resolution* and its scientists incapable of performing any research for an extended period of time. Thus, all the preparation costs associated specifically with the task at hand are recoverable, but costs generally applicable to other, unspecified research are not. *Cf. Alpine*, 23 F.3d at 948.

## VII.

Maritime disputes generally are governed by the "American Rule," pursuant to which each party bears its own costs. *Galveston County Nav. Dist. v. Hopson Towing Co.*, 92 F.3d 353, 356 (5th Cir. 1996). Therefore, "absent statute or enforceable contract, litigants must pay their own attorneys' fees." *Id.* TAMRF contends, however, that it has identified a statute entitling it to fees—TEX. CIV. PRAC. & REM. CODE § 38.001, which provides that a party seeking to recover for breach of an oral or written contract "may recover reasonable attorney's fees."

In *MTO Maritime Transp. Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215, 219-220 (5th Cir. 1988), we rejected a similar challenge to the refusal to award fees under the precursor to § 38.001. Concluding that the statute was discretionary and that there had been no abuse of discretion, the *MTO Maritime* panel affirmed the denial of fees without deciding whether the state statute controlled. Since *MTO Maritime* was decided, however, Texas courts have concluded that "attorneys' fees under section 38.001 are mandatory."[22] Therefore, we must address the

---

[21] *See Evra*, 673 F.2d at 959 (holding that abstract knowledge that any untimely bank transfer could theoretically cause great harm was not sufficient to justify consequential damages).

[22] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 (5th Cir. 2000) (citing *Green* (continued...)

question reserved in *MTO Maritime*, 837 F.2d at 219, namely, "the applicability of state laws providing for attorney's fees in an admiralty contract dispute." The applicability of state law to a maritime contract dispute is a legal determination subject to *de novo* review.

Although the question is a matter of first impression in this circuit, two other circuits have directly addressed it. Citing the "strong interest in maintaining uniformity in maritime law," the Third Circuit has held that the various state statutes providing for attorney fees should not be applied in federal maritime disputes.[23]

Similarly, the First Circuit has held that state law is inapplicable to the question of attorneys' fees in maritime contract disputes, noting that state law cannot apply where it conflicts with maritime law and concluding that the fee statute at issue contradicted the general rule of maritime law that "parties pay their own fees absent bad faith or oppressive litigation tactics."[24] We likewise conclude that the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes, such as § 38.001, to maritime contract disputes.

The judgment is REVERSED in part and AFFIRMED in part, and this matter is REMANDED for further proceedings consistent with this opinion. In addition to the initial award of $49,057.97, TAMRF is entitled to recover for amounts expended in connection with its attempt to deliver the cargo, specifically, $98,000.00 to airlift the cargo to Reunion Island and $38,962.90 to charter a vessel for the attempted rendezvous with the *Joides Resolution*. TAMRF is also entitled to the $7,465.60 incurred in outfitting its vessel for research dependent on the cargo. On remand, therefore, the district court shall enter judgment of $193,486.47 for TAMRF against Magna and then shall determine the extent to which Magna is entitled to indemnification from Italia and Navajo.

---

[22](...continued)
*Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997)).

[23] *Sosebee v. Rath*, 893 F.2d 54, 56-57 (3d Cir. 1990); *id*. at 57 ("[W]here a case arises under the federal maritime law, as this case does, a local statute awarding attorneys' fees should not be applied.").

[24] *See Southworth Mach. Co. v. F/V Corey Pride*, 994 F.2d 37, 41 (1st Cir. 1993); *id*. at 42 (holding that state law governing awards of attorney's fees will not be applied in a case involving a "standard contractual breach to which maritime law has always applied").