IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-20438

ITT EDUCATIONAL SERVICES INC

Plaintiff-Appellee

v.

ROBERTO ARCE; JESSE DELUNA; ALVIE LEE FULCHER; JOSE
GARCIA; WALFREDO HERRERA; BRADLEY HOOVER; MIKE LOPEZ;
ALEX PARDO; ADRIAN PARDO; ROBERTO ROMERO; WILLIAM SCOTT;
SHANNON STANLEY; MICHAEL WORSHAM; JOEL RODRIGUEZ; BETTY
STOVAL CLARK

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This cases arises out of an arbitration proceeding between Appellants and ITT Educational Services, Inc. ("ITT"). After the arbitration, Appellants sought to reveal the arbitrator's findings to third parties. Believing that such action violated a contractual confidentiality provision, ITT filed suit for a temporary restraining order and permanent injunctive relief, which the district court granted. We AFFIRM.

I.

ITT provides technology-oriented postsecondary degree programs. Appellants are fourteen former ITT students and their common counsel, Ms. Clark. Each student signed an Enrollment Agreement with ITT that contained an arbitration clause. In February 2005, Appellants–except for Joel Rodriguez–pursued arbitration against ITT ("the Arce arbitration"). In June 2006, the arbitrator found in favor of Appellants. ITT paid Appellants the amounts awarded under the arbitrator's decision.

In July 2006, Rodriguez demanded arbitration against ITT ("the Rodriguez arbitration"), and his claim is currently pending before a different arbitrator. On November 17, 2006, Ms. Clark informed ITT that she planned to rely upon evidence and findings from the Arce arbitration during the Rodriguez arbitration. Consequently, ITT filed the present suit for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking: (1) a finding that the confidentiality provisions were enforceable and (2) a permanent injunction preventing Appellants from revealing any aspect of the Arce arbitration. Subsequently, ITT filed an Ex Parte Application for a Temporary Restraining Order because Ms. Clark intended to publicly file an unredacted copy of the arbitrator's findings with the district court. The district court granted the temporary restraining order.

On April 10, 2007, the district court conducted a preliminary injunction hearing that, by stipulation of the parties, was converted to a bench trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). On April 24, the district court ruled in ITT's favor, finding that the arbitration clause was severable under Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967), and the confidentiality provision was thereby binding because it was not otherwise unconscionable or void. Furthermore, the district court found that the requirements for permanent injunctive relief were met and enjoined Appellants from "revealing any aspect of the Arce arbitration proceedings, including any rulings, decisions, or awards by the Arbitrator." ITT Educ. Servs., Inc. v. Arce, No. H-07-204, slip op. at 19 (S.D. Tex. Apr. 24, 2007).

Appellants filed a Motion for a New Trial or, in the alternative, a Motion to Alter or Amend Judgment. The district court denied the motion, and this timely appeal followed.

II.

We review the grant of a permanent injunction for abuse of discretion. *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996). "The district court abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction[,] (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief." *Id.* at 916-17.

III.

Appellants argue that the arbitrator's findings constituted a finding of fraudulent inducement. Accordingly, Appellants argue, the entire Enrollment Agreement–including the confidentiality provision–is void under Texas law, such that Appellants may disclose the results of the Arce arbitration. ITT disputes that the arbitrator made a finding of fraudulent inducement. However, ITT argues that–even if the arbitrator made such a finding–the district court nonetheless properly found that the confidentiality provision is part of the arbitration clause and, thereby, severable and enforceable under *Prima Paint* and its progeny. We agree with ITT.

In *Prima Paint*, the Supreme Court held that unless parties intend otherwise, "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded." *Id.* at 402. The Supreme Court subsequently reinforced this notion in *Buckeye Check Cashing, Inc. v. Cardegna*, stating that: "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. . . . [W]e conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract." 546 U.S. 440, 445-46 (2006) (finding that *Prima Paint* applies in state as well as federal courts); *see also Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 452 (2d Cir. 1995) (finding that, under *Prima*

Paint, "arbitration clauses are 'separable' from void or voidable provisions of a contract"). In short, Prima Paint "favor[s] . . . the separate enforceability of arbitration provisions." Buckeye Check Cashing, 546 U.S. at 449.

ITT argues that the confidentiality provision at issue is part and parcel of the arbitration clause. Thus, ITT argues, even if the arbitrator made a finding of fraudulent inducement, the arbitration clause–including its confidentiality provision–is "separable" and remains valid and enforceable under Prima Paint and the arbitration clause's severability provision. We agree with ITT based upon the language of the arbitration clause in the Enrollment Agreements. Under the heading "Resolution of Disputes," the arbitration clause provides that:

> If the Dispute is not resolved pursuant to the School's Student Complaint/Grievance Procedure or through other informal means, then the Dispute will be resolved by binding arbitration between the parties. . . . Both Student and the School agree that this Agreement involves interstate commerce and that the enforceability of this Resolution of Disputes section will be governed by the Federal Arbitration Act, 9 U.S.C. § 1-9 ("FAA"). The arbitration between Student and the School will be conducted in accordance with the American Arbitration Association's ("AAA") Commercial Arbitration Rules ("Commercial Rules") . . . subject to the following modifications:
>
> . . .
> (c) The substantive law which will govern the interpretation of this Agreement and the resolution of any Dispute will be the law of the state where the School is located.[1]
>
> . . .
> (g) All aspects of the arbitration proceeding, and any ruling, decision or award by the arbitrator, will be strictly confidential. The parties will have the right to seek relief in the appropriate court to prevent any actual or threatened breach of this provision.
>
> . . .
> If any provision of this Agreement or its application is invalid or unenforceable, the remainder of this Agreement will not be impaired or affected and will remain binding and enforceable.

We find that the confidentiality provision in subparagraph (g) is part of the arbitration clause. First, all of the relevant language is included in one section under the heading

---

[1] It is undisputed that Texas law is the relevant state law.

"Resolution of Disputes," and the confidentiality provision is a subparagraph of the arbitration clause. Second, the arbitration clause states that disputes will be resolved by binding arbitration "subject to the following modifications," including the confidentiality provision. Finally, prior case law holds that procedural requirements–such as adopting the rules of an arbitration association, choice of law provisions, confidentiality requirements, and rules governing discovery–can be part of an arbitration clause. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 508 (1974) ("[T]he contract contained an arbitration clause providing that 'any controversy or claim . . .' would be referred to arbitration before the International Chamber of Commerce in Paris, France, and that '[t]he laws of the State of Illinois . . . shall apply . . . .'"); Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 163 (5th Cir. 2004) ("The final paragraph on the back of the form contains an arbitration clause . . . stat[ing] that any arbitration would be confidential, and it includes a severability clause . . . ."); Id. at 164 n.5 ("The arbitration provision [with Sprint Spectrum LP] is several paragraphs long, but the portion concerning discovery provides as follows . . . .").

Appellants argue that the district court erred in applying the Prima Paint doctrine because it has never been extended to contractual provisions other than arbitration or forum selection clauses.[2] Appellants argue that applying Prima Paint to a confidentiality provision would impermissibly extend the doctrine. We disagree. Under Appellants' theory of the case, an arbitrator's finding that an agreement was fraudulently induced would be extended so that, after the arbitration was completed, it is determined that the arbitration clause–including the confidentiality provision–was invalid. Consequently, the arbitrator would not have had jurisdiction

---

[2] Prima Paint was extended to forum selection clauses in Scherk v. Alberto-Culver Co. because "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." 417 U.S. 506, 519 (1974). Thus, "an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." Id. at 519 n.14 (emphasis added). Prima Paint was subsequently extended to choice of law provisions. See Haynsworth v. The Corp., 121 F.3d 956, 963 (5th Cir. 1997).

in the first instance to arbitrate the dispute, and any findings would be void for lack of jurisdiction. Thus, the findings of the arbitrator would in essence strip the arbitrator of the jurisdiction to make such findings. Prima Paint should not be read in this manner because it essentially permits the arbitrator to rule on the validity of the arbitration clause in the first instance–a duty that is reserved for the courts.[3] See Buckeye Check Cashing, 546 U.S. at 445-46. Rather, under Prima Paint and the structure and content of the arbitration clause, the clause should be considered "separable" and any alleged finding of fraudulent inducement does not taint the validity of the arbitration clause as a whole or its confidentiality provision in particular.

## IV.

Appellants next dispute the district court's grant of permanent injunctive relief. To obtain permanent injunctive relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). A permanent injunction is generally only granted where, as here, a full trial on the merits has occurred. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 396 (1981).

---

[3] Appellants rely upon Glazer v. Lehman Brothers, Inc., 394 F.3d 444 (6th Cir. 2005). At first glance, the Sixth Circuit's language appears to support Appellants: "Prima Paint did not hold that arbitration provisions in contracts are 'severable' to such an extent that they should be considered separate and distinct contracts. Rather, the Supreme Court held merely that arbitration clauses should be reviewed to determine whether the dispute should be referred to arbitration . . . ." Id. at 452-53. However, Glazer involved a denial of a motion to compel arbitration and "the validity of arbitration clauses when claims of fraudulent inducement are raised concerning the making of those clauses, as opposed to the entire agreement." Id. at 450 (emphasis added). Thus, Glazer is distinguishable because this case does not involve allegations of fraudulent inducement as to the arbitration clause. Moreover, Glazer contains language directly supporting ITT: "Thus, even if there was fraudulent inducement to sign the contract as a whole, by the terms of Sections 3 and 4 of the FAA, the arbitration clause is severable and will only be voided for some error in its making." Id. at 452 (emphasis added).

Appellants argue that the district court improperly granted permanent injunctive relief because: (1) the evidence was insufficient to support a finding that ITT would suffer an injury absent an injunction or that any alleged injury would be irreparable; (2) ITT did not establish that any injury would outweigh the damage the injunction might cause Appellants, especially regarding the Rodriguez arbitration; and (3) enforcing a confidentiality clause to conceal evidence and findings of wrongdoing violates public policy. Appellants' arguments are unavailing.

A plaintiff must allege "specific facts" to support a finding of irreparable injury. See Kemlon Prods. & Dev. Co. v. United States, 638 F.2d 1315, 1322 (5th Cir. 1981). ITT has met this burden. Furthermore, we agree with the district court that ITT will suffer irreparable harm because there is "no cure for the breach of the confidentiality agreement." Toon v. Wackenhut Corr. Corp., 250 F.3d 950, 954 (5th Cir. 2001) (finding irreparable harm where plaintiffs' counsel intentionally disclosed terms of a settlement agreement in violation of the relevant confidentiality provision). If Ms. Clark filed an unredacted copy of the arbitrator's opinion, such information could be used against ITT in the Rodriguez arbitration, as well as open the door to innumerable other suits by ITT students. Appellants' assertion that the district court impermissibly created a per se rule that there is never a cure for breach of a confidentiality agreement lacks merit. Neither our decision nor that of the district court creates a per se rule–rather, based upon the facts presented before us, we conclude that ITT has no cure available to them and, thereby, faces irreparable harm.

Regarding the balance of hardships, Appellants argue that the permanent injunction deprives Rodriguez of the right to introduce all relevant and admissible evidence, including evidence developed in past proceedings, thereby hampering his ability to prove his case. This argument lacks merit. Rodriguez's alleged burden is exactly what he voluntarily contracted for when he signed the Enrollment Agreement and initiated the pending arbitration against ITT pursuant to the confidentiality provision. Rodriguez's burden is not heightened by our decision and he is free to pursue his case in the same manner as any other litigant; we merely hold that he may not rely upon confidential evidence developed during the Arce proceeding. Arbitration

is conducted in the contracted-for manner, so requiring Rodriguez to arbitrate accordingly (i.e., pursuant to a confidentiality requirement) is not an undue hardship.

Finally, regarding alleged public policy concerns, Appellants argue that there is a public interest in permitting prospective ITT students to know of the arbitrator's findings. However, this Court has previously held that a confidentiality provision similar to the one at issue here is not unconscionable or otherwise contrary to public policy. See Iberia Credit Bureau, 379 F.3d at 175-76. The district court, therefore, correctly concluded that the arbitration proceeding should be enforced in accordance with the bargained-for terms of the Enrollment Agreement and properly granted ITT permanent injunctive relief.

V.

Federal Rule of Civil Procedure 65(d) requires an injunction to "state its terms specifically" and "describe in reasonable detail–and not by referring to the complaint or other document–the act or acts restrained or required." Appellants argue that the district court's injunction preventing them from "revealing any aspect of the Arce arbitration proceedings, including any rulings, decisions, or awards by the Arbitrator" is vague and overbroad. Specifically, Appellants argue that the injunction fails to specifically identify the enjoined conduct and contains no exception for appealing the injunction, responding to process, or for communicating with counsel. Appellants' arguments lack merit.

"[T]he broadness of an injunction refers to the range of proscribed activity, while vagueness refers [to] the particularity with which the proscribed activity is described." U.S. Steel Corp. v. United Mine Workers, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975). "'Vagueness' is a question of notice, i.e., procedural due process, and 'broadness' is a matter of substantive law." Id.

Appellants rely upon John Doe #1 v. Veneman, where this Court found an injunction overbroad because it permitted release of personal information that "was not properly before the district court" and because it applied to records that were not requested, thereby violating the Administrative Procedures Act. 380 F.3d 807, 818-19 (5th Cir. 2004). Appellants' reliance on Veneman is misplaced, however, because the

injunction at issue here did not exceed the scope of activity properly before the district court. Furthermore, Appellants' argument that the injunction prevents them from appealing the injunction, communicating with counsel, responding to process, or utilizing publicly available materials is unfounded. For example, communicating with Ms. Clark will not "reveal" any prohibited material–especially given that she represented Appellants at the arbitration–and Appellants have been able to appeal the injunction by filing documents under seal. Finally, Appellants' argument that the injunction's language is not sufficiently specific also fails because the language of the injunction closely tracks the bargained-for contractual language of the confidentiality provision.[4] The injunction is no broader than the language that the private parties contracted for; it notes the specific arbitration that is subject to the injunction and specifies that the term "aspect" includes "rulings, decisions or awards." We find that the injunction is neither vague nor overbroad.

## VI.

Therefore, the judgment of the court below is AFFIRMED.

---

[4] Appellants contend that the injunction's language is improper under Rule 65(d) because it references another document. However, the injunction does not reference or cite the confidentiality provision or any other document. Nonetheless, Appellants argue that the injunction is impermissible under U.S. Steel Corp. v. United Mine Workers, where this Court held an injunction was overbroad despite "the fact that the order was couched in the exact words of the contract arbitration clause." 519 F.2d 1236, 1245 (5th Cir. 1975). The Court in U.S. Steel, however, rested its conclusion upon the fact that the injunction at issue violated § 9 of the Norris-LaGuardia Act and the complex rules governing labor injunctions. Id. at 1245-46. The same concerns are not implicated in this case.