# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 21, 2010

No. 09-10804

Lyle W. Cayce
Clerk

BAGBY ELEVATOR COMPANY, INC.,

> Plaintiff-Appellee Cross-Appellant

> v.

SCHINDLER ELEVATOR CORP.,

> Defendant-Appellant Cross-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Appellant Schindler Elevator Corp. ("Schindler") appeals from a jury verdict awarding appellee Bagby Elevator Co., Inc. ("Bagby") economic and exemplary damages for tortious interference with contract. We affirm.

## I. FACTS AND PROCEEDINGS

### A.    Background

As competitors in the Dallas area elevator-servicing market, both Bagby and Schindler provide commercial clients with a variety of services, including elevator maintenance, modernization, construction, installation, and repair. In 2003, Bagby hired Derald Armstrong as the company's salesperson for that area.

No. 09-10804

Armstrong quickly developed business contacts with the management at Younan Properties ("Younan"), a California-based company which owns and mortgages commercial office buildings in the Dallas area and across the country.

Through Armstrong's efforts, Bagby soon obtained contracts to perform various maintenance services for Younan. In early 2006, Younan contracted with Bagby to provide full elevator maintenance services for a building that the company was leasing to KPMG.

Prior to that agreement, Younan had depended primarily on Schindler to service its commercial properties. In late 2006, however, Younan complained of Schindler's poor work quality and cancelled the parties' existing servicing agreements. In a letter to Schindler formalizing the cancellation, Younan explained that Schindler's work quality had deteriorated to such an extent that Younan feared it was "exposing [its] tenants to undue risk and potential injury."

Shortly after cancelling its contracts with Schindler, Younan asked Bagby to furnish price quotations for several of the remaining properties. With Armstrong acting as its point person, Bagby eventually proposed prices for, and secured five-year service contracts on, eight of Younan's properties in the Dallas area. To fulfill those contracts, Bagby hired an additional technician and added a new route to its servicing department.

Despite Armstrong's success in securing the Younan properties, tensions developed between him and Bagby after the company discovered that he had been using his company credit card for personal expenses, including his personal insurance and his family's cell phone plan. Then, after discovering that Armstrong had also charged more than $2,000 in personal fuel expenses to the card, Bagby immediately terminated his employment.

No. 09-10804

Prior to his termination, Armstrong had contacted Schindler's Dallas office several times about possible employment opportunities, although the parties had never reached an agreement. Within days after his termination by Bagby, however, Armstrong again contacted Schindler about employment opportunities. This time, Schindler agreed to terms with Armstrong and offered him a position with the company. Armstrong's principal job with Schindler was to recover previously cancelled contracts, such as the contracts for servicing the Younan properties.

Shortly after starting work for Schindler, Armstrong set up a meeting between Schindler and Younan to discuss the Bagby contracts. Prior to the meeting, Armstrong provided Schindler with the terms of the Bagby service contracts, enabling Schindler to undercut Bagby by offering lower rates. After the meeting, Younan and Schindler signed new contracts for Schindler to replace Bagby as its primary elevator-servicing company for the eight Younan properties.

A few days after signing the contracts with Schindler, Younan informed Bagby that it was cancelling all of their earlier contracts. In a letter confirming the cancellation, Younan explained that it preferred to do business with a national service provider, *i.e.*, Schindler, and was thus cancelling its contracts pursuant to a purported "30-day cancellation clause" in each agreement. In that letter, Younan ordered Bagby to cease all maintenance work on Younan properties immediately. Bagby protested the cancellations and demanded that Younan abide by the terms of the contracts, which, according to Bagby, did not contain the 30-day cancellation clause that Younan alleged.

No. 09-10804

In response, Younan sent Bagby another letter, again explaining that it had elected to exercise its right to cancel the agreements pursuant to the purported 30-day cancellation clauses. Schindler, through Armstrong, had informed Younan that all of its contracts with Bagby contained cancellation clauses, even though they did not. Younan apparently never bothered to check these contracts. For several months thereafter, Bagby continued to insist that (1) Schindler cease work on the Younan buildings and stop interfering with Bagby's contracts, and (2) Younan abide by the terms of the still-valid contracts with Bagby. Both Younan and Schindler refused.

In late 2007, Bagby sued Younan for breach of contract. Younan immediately contacted Schindler and Armstrong for assistance in defending the suit and requested evidence of the 30-day cancellation clauses. In response, Armstrong produced a suspicious letter that he claimed to have written in December 2006 when he was still a Bagby employee. In the letter, Armstrong purports to give Younan a unilateral right to cancel any contracts with Bagby by furnishing 30 days notice. There is good reason to believe that the letter is not authentic, however, as none of the parties had any record of it before Armstrong produced it in connection with this litigation, and its terms do not appear in any of the parties' documents.

## B.    Proceedings

In its lawsuit, Bagby sought to recover approximately $240,000 in lost profits resulting from Schindler's repeated interference with the Younan contracts. Prior to trial, the district court granted summary judgment in favor of Schindler on several of Bagby's claims, including tortious interference with its business prospects and tortious interference with its non-compete agreement

4

No. 09-10804

with Armstrong.  At trial, the district court declined to instruct the jury on Schindler's proposed "unclean hands" defense, as the court determined that, under Texas law, the defense is limited solely to equitable actions and does not apply in intentional tort suits for damages.

At the conclusion of trial, the jury found in favor of Bagby on its claim for tortious interference with contract.  Over Schindler's objection, the district court used the Texas Pattern Jury Instruction on exemplary damages to instruct the jury that it could award such damages to Bagby if it found that Schindler acted with either actual malice or gross negligence.  Concluding that Bagby was entitled to exemplary damages, the jury awarded Bagby a total of $210,222.95 in economic damages and $500,000 in exemplary damages.[1]

## II. ANALYSIS[2]

### A.    Jury instructions

Schindler first contends that the district court erred by instructing the jury that it could award exemplary damages on a finding of either actual malice or gross negligence.  According to Schindler, Texas law requires a finding of actual malice as a prerequisite to awarding exemplary damages in cases of tortious interference with contract.  In response, Bagby urges that the district court did not err reversibly when it gave Texas's pattern jury instruction on exemplary damages.  We review the propriety of jury charges and instructions

---

[1]  Pursuant to Tex. Civ. Prac. & Rem. Code § 41.008, the district court reduced this amount to $420,445.90, or twice the amount of economic damages.

[2]  As this is a diversity case, we apply the substantive law of Texas.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

No. 09-10804

under the deferential abuse of discretion standard.[3] As district courts "are given wide latitude in formulating jury charges," the challenging party "must show that the instruction as a whole creates substantial doubt as to whether the jury was properly guided."[4] Further, even an erroneous jury instruction will not rise to the level of reversible error if, given the entire record, "[the] challenged instruction could not have affected the outcome of the case."[5]

Here, the district court based the charge at issue on Texas Pattern Jury Charges § 115.36B, which states that exemplary damages may generally be awarded if the jury finds, by clear and convincing evidence, that the defendant acted with malice, gross negligence, or fraud.[6] The commentary on § 115.36B states expressly that the charge is appropriate for use in cases involving tortious interference with contract.[7] That commentary further explains that, because of a change in Texas substantive law regarding the standard for awarding exemplary damages, the charge should only be used in cases filed "on or after September 1, 2003."[8] In contrast, there is a separate jury charge provided for use in cases filed *before* September 1, 2003, which *does not* allow for the

---

[3] *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 348 (5th Cir. 2008).

[4] *Id.* (internal quotation marks and citation omitted).

[5] *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002).

[6] TEX. PATTERN JURY CHARGES § 115.36B (2008 ed.).

[7] *See* TEX. PATTERN JURY CHARGES § 115.36B, Comment ("When to use. [This charge] is used as a predicate to ... the question for exemplary damages. It is based on an affirmative finding to a liability question such as ... 106.1 (interference with existing contract)."

[8] *Id.*

No. 09-10804

consideration of gross negligence.[9]   Importantly, the charge selected by the district court directly mirrors the current Texas statute on exemplary damages, which states that, in general,

> exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence.[10]

Schindler has not cited any case to us in which the courts of Texas or the federal courts applying Texas law have made an exception to the general rule cited above, and we have found none.  And, we find it persuasive that Texas courts have repeatedly approved the Texas Pattern Jury Charges as a correct statement of the law.[11]   Accordingly, under our highly deferential standard of review, we perceive no reversible error in the district court's decision to use the pattern jury instruction here.

**B.    Sufficiency of the evidence**

Schindler also asserts that, notwithstanding the jury charge, there is insufficient evidence to support an award of exemplary damages.  Bagby counters that the record contains ample evidence of both malice and gross negligence to support the award.  When evaluating the sufficiency of the

---

[9]   *See* TEX. PATTERN JURY CHARGES § 115.36A (2008 ed.).

[10]   TEX. CIV. PRAC. & REM. CODE § 41.003 (2008 ed.); *see also Clements v. Withers*, 437 S.W.2d 818, 822 (Tex. 1969) (explaining that a plaintiff seeking to recover exemplary damages for tortious interference with contract must generally show actual malice but that "[t]he existence of such malice may not be necessary in a case where the defendant's acts are accompanied by fraud *or other aggravating circumstances*" (emphasis added)).

[11]   *See, e.g., Acord v. Gen. Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984).

evidence, we accord "great deference to the jury's verdict."[12] Thus, we will "view all of the evidence in the light most favorable to the verdict and reverse only if the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion."[13] "Where the jury could have reached a number of different reasonable conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld."[14]

Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence of both malice and gross negligence to support an award of exemplary damages. As for malice, the jury could have determined that (1) Schindler hired Armstrong for the express purpose of interfering with Bagby's contract with Younan; (2) Schindler entered into new contracts with Younan knowing that Younan had five-year, non-cancelable contracts with Bagby; (3) Schindler and its employee, Armstrong, deliberately misled Younan to believe that it could cancel its Bagby contracts, even going so far as to fabricate evidence in support of their claims; and (4) Schindler sought to "recover" more properties from Bagby than it had initially lost. Likewise, the evidence was sufficient to support a finding of gross negligence, as the jury could have reasonably concluded that Schindler acted with conscious indifference to Bagby's rights despite being aware of an extreme risk that it was causing Bagby significant harm by interfering with its valid contracts. Although this evidence was not uncontroverted, we are satisfied that, when viewed in the light most

---

[12]  *Baltazar v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998).

[13]  *Id.*

[14]  *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

No. 09-10804

favorable to the jury's verdict, it is sufficient to support the award of exemplary damages.

**C.    Causation**

Schindler contends further that the district court erred in denying its motion for judgment as a matter of law, in support of which it urged that there is insufficient evidence of causation to support a finding of tortious interference with contract.  "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[15]

Under Texas law, a plaintiff seeking to establish causation for tortious interference with a contract must show "that the evidence, and logical inferences drawn from the evidence, support a reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about the injury."[16]  Here, there is ample evidence of causation to support the verdict.  For example, the jury heard that Schindler hired Armstrong immediately after his termination by Bagby for the sole purpose of recovering contracts previously lost to Bagby, such as those for the Younan properties.  And, just a few days into his employment at Schindler, Armstrong set up a meeting between Schindler and Younan to discuss those contracts.  The jury also heard that Younan based its acts, at least in part, on Schindler's misrepresentation that Younan was free to cancel its contracts with Bagby.  And, even when it became clear that Bagby's contracts with Younan did not contain any such clause, Schindler continued to interfere.

---

[15] *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007).

[16] *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App. 2006).

No. 09-10804

We are satisfied that there is sufficient evidence of causation to support the jury's verdict.

**D.    Schindler's "unclean hands" defense**

Finally, Schindler insists that the district court erred by refusing to instruct the jury on its proposed "unclean hands" defense. Schindler urges that it should have been absolved of liability on a showing that Bagby had acted improperly when it obtained the Younan contracts from Schindler in the first place. Schindler's argument is unavailing, however, as Texas courts have long held that the affirmative defense of unclean hands is available only in equity.[17] Under Texas law, "[t]he clean hands doctrine requires that one who seeks equity, does equity."[18] As at least one Texas court has explained, the doctrine "should not be applied unless the party asserting [it] has been seriously harmed and the wrong complained of cannot be corrected without the application of the doctrine."[19] Thus, the district court did not err by denying Schindler's proposed defense in the instant case.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.

---

[17] *See, e.g., Furr v. Hall*, 553 S.W.2d 666, 672 (Tex. App. 1977) ("The 'clean hands' maxim is strictly an equitable doctrine not applicable outside equitable proceedings.").

[18] *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App. 2006).

[19] *Id.*

10