# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10439

MERRITT HAWKINS & ASSOCIATES, L.L.C.,

Plaintiff - Appellee Cross-Appellant

v.

LARRY SCOTT GRESHAM; CONSILIUM STAFFING, L.L.C.; BILLY BOWDEN;

Defendants - Appellants Cross-Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

June 21, 2017

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

This dispute arises out of two employees' departure from a medical staffing company to work for a competitor. Plaintiff-Appellee brought claims against Defendants-Appellants based on the alleged breach of non-compete and non-solicitation provisions in its employment contracts, tortious interference, and theft of computer files. The parties now appeal and cross-appeal exemplary damages, evidentiary rulings, allegedly inconsistent verdicts, a take-nothing judgment, attorneys' fees, and the denial of equitable

No. 16-10439

remedies.  For the reasons that follow, we VACATE the district court's award of exemplary damages but otherwise AFFIRM.

## I.  BACKGROUND

Plaintiff-Appellee Merritt Hawkins and Associates, L.L.C. ("MHA") recruits physicians to fill permanent positions at hospitals and other healthcare organizations.  Defendant-Appellant Consilium Staffing, L.L.C. ("Consilium") primarily places physicians in temporary positions, although it sometimes fills permanent positions.  The companies are both headquartered near each other in Irving, Texas, and Consilium's founder was a former partner at MHA.  As a condition of employment, MHA requires its employees to sign contracts that include non-competition, non-disclosure, and non-solicitation clauses.  Billy Bowden worked at MHA until September 2010, triggering Bowden's non-compete clause for one year and his non-solicitation clause for three years. After the expiration of his non-compete clause, Bowden began working for Consilium.  In 2012, MHA claims that Bowden violated the non-solicitation provision by recruiting Larry Gresham to leave MHA for Consilium.  At the time, Gresham worked at MHA as a Search Consultant, and his responsibilities included recruiting medical specialists, selling services, and account management.  Gresham left MHA and immediately took a similar position at Consilium.   Before leaving MHA, Gresham allegedly accessed MHA's computer network and copied over 400 of MHA's proprietary files.  MHA claims that Gresham also deleted hundreds of files off his work computer in an attempt to hide this alleged theft.

Litigation ensued, with MHA bringing numerous claims against Consilium, Bowden, and Gresham (collectively "Defendants") for breach of contract, tort, and violations of state and federal statutes.  The district court entered partial summary judgment, finding as a matter of law that the non-

2

compete and non-solicitation provisions in the contracts were valid and that Gresham had breached his non-compete agreement.

At trial, Consilium sought to introduce evidence concerning a previous breach of contract suit involving MHA, Gresham, and a third party. Another medical staffing company, Arthur Marshall, had sued MHA and Gresham for breach of Gresham's non-compete contract when he left Arthur Marshall to work for MHA. The district court excluded this evidence.

Over the objection of Defendants, the district court allowed Mark Smith, MHA's president, to testify as a lay witness on damages. While noting the difficulty of calculating damages for the missing and stolen computer files, he explained that "I attached a value of . . . a hundred dollars for each item . . . . A hundred dollars is what I would need to pay someone on an hourly basis to have them go in and attempt to create [these files from scratch]." Next, Smith stated that the amount MHA would spend to train a new employee was $45,000. He based this figure on the number of hours spent training each new employee and the continuing training that MHA provides its employees. Finally, Smith testified about MHA's calculation of lost profits, which he helped prepare.

After a five-day trial, the jury returned its verdict. It found that Gresham was not liable for violating the federal Computer Fraud and Abuse Act, misappropriating MHA's trade secrets, violating the Texas Theft Liability Act, or breaching his fiduciary duty to MHA. The jury found that Gresham breached his non-compete agreement and failed to return MHA's property, but it awarded no damages for those claims. The jury found Gresham liable, however, under Texas's Harmful Access by Computer statute and awarded MHA $50,000. The jury also concluded that Bowden conspired with Consilium to tortiously interfere with Gresham's employment agreement but again

awarded no damages. It determined that Bowden breached his non-solicitation agreement and awarded $2,000 in damages. Finally, the jury found that Consilium conspired with Bowden to tortiously interfere with—and did tortiously interfere with—Gresham's contract, for which it awarded $30,000 in damages. Finding that Consilium acted with malice, the jury also imposed $124,000 in exemplary damages.

Following the jury's verdict, Defendants filed a motion for judgment as a matter of law, MHA filed a motion to alter or amend the judgment, and both parties moved for attorneys' fees. Concluding that a liquidated damages provision in Bowden's contract provided the only measure of damages for his breach of the non-solicitation provision and that MHA had not shown evidence of any damages under that clause's formula, the district court entered a take-nothing judgment in favor of Bowden. In MHA's motion to alter or amend the judgment, it requested an injunction against Gresham, an order for Gresham to return MHA's files, and equitable extension of Gresham's and Bowden's restrictive covenants. Even though the employees' contracts allowed for such remedies, the district court denied the motion because it concluded that MHA did not request such relief prior to filing for reconsideration, and it failed to demonstrate that equitable remedies were necessary. The district court further determined that MHA was entitled to attorneys' fees for its Harmful Access by Computer claim, while Gresham was entitled to attorneys' fees under the Texas Theft Liability Act. It denied MHA attorneys' fees on its breach of contract claims because it did not recover any damages for those claims. Ultimately, the court awarded each party an identical amount of attorneys' fees, canceling out the awards.

Defendants appeal, and MHA cross-appeals.

No. 16-10439

## II.  DISCUSSION

All appealed and cross-appealed claims in this case are brought under Texas law.  The district court had supplemental jurisdiction over the state law claims because they arose out of the same case or controversy as MHA's federal law claims.  *See* 28 U.S.C. § 1367; *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016).  When reviewing the district court's evidentiary rulings, however, we apply the Federal Rules of Evidence.  *See* Fed. R. Evid. 101; *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993).

### A. Exemplary Damages

Consilium appeals the award of $124,000 in exemplary damages.  It argues that the evidence presented by MHA was insufficient to support the award of exemplary damages.  We agree.

MHA points to four pieces of evidence to justify the exemplary damages award.  First, MHA argues that it demonstrated Consilium was aware that Gresham had a non-compete contract with MHA but hired him regardless.  Second, the jury heard testimony that Consilium was founded by a former partner at MHA.  Third, MHA claims that the close proximity between MHA's and Consilium's headquarters is circumstantial evidence of malice because it shows intent and opportunity to "raid MHA for employees."  Fourth, MHA claims that Bowden, Consilium's employee, displayed malice towards MHA and that this malice can be imputed to Consilium through vicarious liability.  Specifically, MHA introduced evidence that Bowden sent Gresham a text telling him to "slap [his MHA supervisor] on the back of the head" before leaving MHA.  Bowden also testified that he had been fired from MHA and disliked the company.

We review the district court's denial of a Rule 50 motion for judgment as a matter of law de novo.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 282 (5th Cir. 2007) (quoting *Flowers v. S. Reg'l Physicians Servs., Inc.*, 247 F.3d

5

229, 235 (5th Cir. 2001)).  However, our review is highly deferential to the jury's verdict.  *See Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010).  We "must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence."  *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014).

To recover exemplary damages, MHA had to prove by clear and convincing evidence that Defendants acted with malice.  *See* Tex. Civ. Prac. & Rem. Code § 41.003(a)(2).  Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 41.001(2).  MHA bears the burden of proof, which it cannot meet by showing "ordinary negligence, bad faith, or a deceptive trade practice."  *Id.* § 41.003(b).  Rather, "'malice' means 'a specific intent by the defendant to cause substantial injury or harm to the claimant.'"  *Horizon Health Corp. v. Acadia Healthcare Co.*, No. 15-0819, --- S.W.3d ---, 2017 WL 2323106, at *9 (Tex. May 26, 2017) (quoting Tex. Civ. Prac. & Rem. Code § 41.001(7)).  Importantly, "when a tort requires willful harm as a necessary element of liability, that willfulness alone cannot also justify a punitive damages award. . . . More is required."  *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 662 (Tex. 2012).  Tortious interference with a contract requires "willful and intentional" interference.  *See Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995) (listing elements).

In *Horizon*, the Texas Supreme Court recently upheld a finding of malice where each of the defendants, former members of Horizon's upper-management, "specifically intended to cause substantial injury or harm to Horizon."  *Horizon*, 2017 WL 2323106, at *10.  These former employees (1) staggered departure in a way intended to deprive Horizon of leadership and funnel information to its competitor, (2) created a business plan predicated on

stealing a large number of clients from their former company, and (3) stole documents and trade secrets from their former company and immediately used them to solicit clients. *Horizon*, 2017 WL 2323106, at *10–13.  Similarly, this court has upheld exemplary damages for tortious interference and misappropriation of trade secrets under Texas law where one company (1) attempted to "'conquer and dominate' the market," (2) strategically hired away key employees, such as top managers and technicians, (3) and compelled the hired parties to upload and use confidential client contact information. *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 730, 741 (5th Cir. 2008); *see also Bagby*, 509 F.3d at 773 (upholding exemplary damages for tortious interference where an employee was hired for the express purpose of undercutting a competitor's contract and where the defendant deliberately misled a client about its ability to cancel a contract and fabricated evidence).

Unlike in those cases, the only argument and evidence that MHA presented to the jury on the issue of exemplary damages was that Consilium intentionally breached the non-compete contract.  MHA claimed that "the circumstances of this case [were] quite egregious, that everything was intentional, [Consilium] knew [MHA] had these agreements . . . and they breached them anyway."  However, this is the exact type of argument that the Texas Supreme Court explains is insufficient to show malice when an element of the underlying cause of action is willful harm.  *See Safeshred*, 364 S.W.3d at 662; *Horizon*, 2017 WL 2323106, at *9 ("evidence of the tort itself, with little more" is an improper basis for awarding exemplary damages).  Even drawing all inferences in favor of MHA, *see Casey*, 770 F.3d at 326, the additional evidence MHA points to is insufficient to show that Consilium acted with specific intent to cause substantial harm to MHA.  The proximity of the two businesses, without more, does not lead to the conclusion that Consilium acted

7

with malice towards MHA.  And the fact that Consilium's founder was a partner at MHA was not raised for the purpose of showing that MHA engaged in a strategic plan of hiring away MHA employees to harm it, but rather to show that Consilium was aware that MHA's employees had non-compete agreements.  Moreover, MHA has never claimed that Consilium induced Gresham to steal or use its proprietary information, and the district court granted a motion in limine—not appealed here—that excluded all evidence of other MHA employees leaving for Consilium.

Turning to MHA's vicarious liability argument, Texas will hold an employer "liable for exemplary or punitive damages because of the acts of [its] agent, but only if: (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act." *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967).  MHA, however, neither adduced evidence in support of a vicarious liability theory of recovery nor made a vicarious liability argument to the jury.  Even if the jury concluded that Bowden targeted Gresham because of a desire to harm MHA, his personal animus towards MHA cannot support vicarious liability because it has not been alleged that he did anything more than induce Gresham to leave MHA.  Therefore, MHA has failed to articulate how Bowden putting Gresham in contact with Consilium's recruitment staff evidences specific intent to cause MHA "to suffer substantial injury that [is] 'independent[ly] and qualitatively different' from the compensable harms associated with the underlying causes of action." *Horizon*, 2017 WL 2323106, at *10 (quoting *Safeshred*, 365 S.W.3d at 662).

No. 16-10439

For these reasons, we conclude that the award of exemplary damages must be vacated.[1]

## B. Evidentiary Rulings

Defendants appeal the district court's decision to allow the lay testimony of Mark Smith, MHA's president of eight years and a twenty-six year employee, on the issue of damages. Consilium argues that Smith should not have been allowed to testify about (1) lost profits, (2) the value of computer files taken or deleted by Gresham, and (3) training expenses because "virtually none of [his] testimony] was based . . . on his personal knowledge" and "none of the matters were the subject of his ordinary business responsibilities."

This court reviews evidentiary rulings for an abuse of discretion. *See DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003). Even where the district court abuses its discretion, we will not reverse an evidentiary ruling absent substantial prejudice. *Tex. A&M Research Found. v. Magna Transp. Inc.*, 338 F.3d 394, 403 (5th Cir. 2003).

Federal Rule of Evidence 701 governs lay witness testimony and requires that "testimony in the form of an opinion [be] limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." A company president may provide "a broader range of testimony than a traditional lay witness . . . when testifying to matters concerning [his] business." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010); *accord* Fed. R. Evid. 701 advisory committee's note to 2000

---

[1] Having reversed the award of exemplary damages, we decline to address Consilium's argument that the district court's decision to exclude evidence of a previous lawsuit where MHA was sued by a third party over a non-compete contract prejudiced its defense against MHA's arguments for exemplary damages.

amendments ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an . . . expert.").

### 1. *Lost Profits*

Defendants challenge Smith's testimony that he helped to prepare the calculation of lost profits. Generally, company officers can testify about lost profits "if the witness has direct knowledge of the business accounts underlying the profit calculation." *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (allowing a corporation's risk manager to testify about lost profits when he had prepared lost profit statements). Moreover, on cross-examination, Defendants had every opportunity to traverse Smith's figures, credibility, and methodology. *Id.* at 374. Therefore, we do not perceive a "clear abuse of discretion" that would warrant reversal. *See DIJO, Inc.*, 351 F.3d at 685.

### 2. *Value of Computer Files*

We also hold that the district court did not abuse its discretion, as Defendants argue, in admitting Smith's testimony about the value of missing computer files. Smith based at least some of this testimony about the computer files on personal knowledge, stating that he would have to pay an employee at least $100 an hour to recreate every file that was deleted and that it would be more expensive to search MHA's database to see if any files remained. However, he noted that it was difficult to calculate damages, and he offered modest support for the value he assigned to files that were taken, but not deleted. Still, Defendants vigorously cross-examined Smith on his calculation and the jury was entitled to give such weight to this testimony as it saw fit. *See Miss. Chem.*, 287 F.3d at 374.

Even assuming it was error to admit Smith's testimony on the value of stolen computer files, any error was harmless. A computer forensics expert

testified that he billed MHA over $60,000 for his work assessing the damage to MHA's computer system, excluding litigation costs. Additionally, MHA's IT employee testified about the expenses he incurred and the hours he worked trying to restore the computer files. The jury awarded less in damages than these two experts testified that MHA spent because of Gresham's actions, therefore Gresham was not "substantially prejudiced" by Smith's testimony on the value of computer files. *See Tex. A&M Research Found.*, 338 F.3d at 403.[2]

### 3. Training Expenses

Neither did the district court abuse its discretion by admitting Smith's testimony about training expenses. Courts regularly allow company officer testimony about routine costs incurred. *See Versai Mgmt. Corp*, 597 F.3d at 737. Training expenses for employees are the sort of routine matters within Smith's personal knowledge as MHA's president, and therefore, the district court did not abuse its discretion in admitting his testimony on that issue. *See DIJO*, 351 F.3d at 686.

## C. Inconsistent Verdict

Consilium asserts that the jury's finding that Gresham's breach of his non-compete contract and Bowden's tortious interference caused no damages should have precluded the jury's conclusion that Consilium's tortious interference caused $30,000 in damages.

We review a district court's denial of a motion for judgment as a matter of law de novo. *Navigant Consulting*, 508 F.3d at 282. We view all "evidence

---

[2] Gresham also raises a challenge to the sufficiency of the evidence for the judgment against him on the Harmful Access by Computer claim because he asserts there was no legally admissible evidence on damages. The testimony of Smith, the computer forensics expert, and MHA's IT employee is also sufficient evidence to justify the district court's denial of Gresham's Rule 50 motion on this issue. *See Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014).

in the light most favorable to upholding the jury's decision by a finding of consistency." *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001). "The district judge . . . is in the best position to determine whether the answers reflect confusion or uncertainty." *Id.* at 342–43 (quoting *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 821 (8th Cir. 1998)).

We agree with the district court that the jury's verdict was consistent. As the district court noted, "[t]he charge made it clear that the jury was free to make findings, place blame, and assign damages to Defendants as it deemed appropriate. Moreover, Defendants do not argue that the jury was improperly instructed or that the charge was faulty." The jury's finding of liability is consistent and we are not convinced that its assignment of damages somehow renders the verdict inconsistent.

Therefore, we agree with the district court that the jury verdict does not "reflect confusion or uncertainty." *See Ellis*, 248 F.3d at 343 (quoting *Smith*, 151 F.3d at 821).

### D. Take-Nothing Judgment

The district court determined that a liquidated damages provision[3] in Bowden's employment contract controlled damages, and because MHA failed to prove damages under that provision, MHA was not entitled to any damages from his breach of contract. MHA insists that the district court erred in entering a take-nothing judgment on Bowden's breach of the non-solicitation agreement. MHA first argues that the district court's ruling runs counter to

---

[3] The liquidated damages provision states:

It is agreed that . . . it would be impracticable or extremely difficult to fix the actual damages and therefore [Bowden] agrees upon his breach of this Agreement [that Bowden] will pay to [MHA] as liquidated damages and not as a penalty the sum equal to the standard fee charges to any client for each physician who accepts employment or associates with any person or entity as a result of a breach of this Agreement.

the plain language of the provision.  Under MHA's interpretation, since the provision only awards damages "for each physician who accepts employment or associates with any person or entity as a result of a breach of this Agreement," the provision applies exclusively to breaches of the non-compete clause and breaches of the non-solicitation clause involving physicians.  MHA alternatively alleges that even if it is not entitled to actual or liquidated damages, it is nonetheless entitled to nominal damages.

Contract interpretation is a question of law that this court reviews de novo.  *MCI Tel. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).  When interpreting a contract, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).  This court should "consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless."  *FPL Energy, LLC v. TXU Portfolio Mgt. Co.*, 426 S.W.3d 59, 63 (Tex. 2014).

Texas applies a two-prong test when determining whether to enforce a liquidated damages provision: "(1) 'the harm caused by the breach is incapable or difficult of estimation,' and (2) 'the amount of liquidated damages called for is a reasonable forecast of just compensation.'"  *FPL Energy,* 426 S.W.3d at 69 (quoting *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991)).  Texas recognizes that nominal damages may be awarded for a breach of contract.  *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664–65 (Tex. 2009).  Still, "in recent decades the rule in Texas has been that nominal damages are not available when the harm is entirely economic and subject to proof."  *Id.* at 665.

Here, the liquidated damages provision states that it applies to "this Agreement" without qualification.  It is not rendered meaningless simply because in some situations its formula may result in no damages.  And because

the liquidated damages are tied to MHA's key business concern of protecting its client base, the provision appears to be "a reasonable forecast of just compensation." *FPL Energy*, 426 S.W.3d at 69. Moreover, the district court did not err in declining to award nominal damages because the harm is "entirely economic and subject to proof." *MBM Fin.*, 292 S.W.3d at 665. Although MHA could have introduced evidence of physicians leaving because of Bowden's breach—as the liquidated damages provision called for—it provided no evidence to that effect.

For these reasons, we uphold the district court's take-nothing judgment in favor of Bowden.

### E. Attorneys' Fees

MHA argues that the district court erred in three respects in awarding and calculating attorneys' fees: (1) it committed legal error by not awarding MHA legal fees on expenses that were intertwined with its Harmful Access by Computer claim; (2) it failed to award MHA attorneys' fees on its breach of contract claim; and (3) it improperly awarded attorneys' fees to Gresham. We do not agree.

"The standard of review for an award of attorneys' fees is whether the trial court abused its discretion in making the award." *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003). Factual determinations are reviewed for clear error. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002).

Texas allows the recovery of attorneys' fees "only if specifically provided for by statute or contract."[4] *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). Gresham's and Bowden's employment contracts both contained a provision for the prevailing party to recover attorneys' fees. A prevailing party on a Harmful

---

[4] Because the contract and tort claims at issue on appeal are governed by Texas law, Texas law also governs the award and reasonableness of attorneys' fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Access by Computer claim "is entitled" to attorneys' fees. Tex. Civ. Prac. & Rem. Code § 143.002. Likewise, the prevailing party on a Texas Theft Liability Act claim "shall" receive attorneys' fees. *Id.* § 134.005(b). Attorneys' fees are mandatory under these two statutes. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). A prevailing party is one that "receive[s] affirmative judicial relief." *Intercontinental Grp. P'ship v. KB Home Loan Star, L.P.*, 295 S.W.3d 650, 656 n.27 (Tex. 2009). "A zero on damages necessarily zeros out 'prevailing party' status." *Id.* at 655–56. For purposes of the Texas Theft Liability Act, however, a prevailing party includes a successful defendant, regardless of his success on other claims in the suit. *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 705–06 (Tex. App.—Hous. [1st Dist.] 2014, no pet.).

### 1. *Intertwined Attorneys' Fees*

First, MHA asserts that the court erred by only awarding attorneys' fees for those expenses "solely and exclusively attributable" to the Harmful Access by Computer claim. MHA submits that the district court applied the wrong legal standard because it was entitled to fees that were intertwined with its Harmful Access claim, even if they were also incurred advancing unsuccessful claims.

"[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). However, "when discrete legal services advance both a recoverable and unrecoverable claim . . . they are so intertwined that they need not be segregated." *Id.* at 313–14. "A party requesting attorneys' fees carries the burden of proof and the duty to segregate fees." *U.S. for Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998).

We conclude that the district court applied the correct legal standard. In its order for MHA to segregate fees, the district court quoted *Chapa*, the

controlling Texas Supreme Court case, for the proposition that "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." 212 S.W.3d at 313–14. After requesting that MHA segregate fees, the district court found that MHA did "a poor job segregating fees in a meaningful way and [its Supplemental Declaration] [was] so heavily redacted and vague that it is not possible to segregate fees *sua sponte* with any degree of certainty." Because of this, the district court cut the fee amount "which [it was] not entirely certain [was] *only* for legal work on *only* the harmful access claim." The onus is on the party requesting attorneys' fees to sufficiently prove and segregate fees. *Varco Pruden*, 161 F.3d at 919. The district court cited the correct standard but concluded that MHA failed to provide adequate documentation on what fees it was entitled to recover. Therefore, the district court did not abuse its discretion when calculating MHA's award of attorneys' fees. *DP Sols.*, 353 F.3d at 433.

### 2. Breach of Contract Attorneys' Fees

Next, MHA insists that it was the prevailing party on its breach of contract claims against Gresham and Bowden and thus entitled to attorneys' fees on those claims. We disagree.

The Texas Supreme Court has explicitly stated that "[a] zero on damages necessarily zeros out 'prevailing party' status." *KB Home*, 295 S.W.3d at 655–56. Although MHA received a judgment that Gresham and Bowden had breached their contracts, MHA was awarded no damages or equitable relief on those claims. *See Epps*, 351 S.W.3d at 866 (a prevailing party is one that receives either monetary or equitable relief (citing *KB Home*, 295 S.W.3d at 655)). The jury's verdict against Consilium does not entitle MHA to attorneys' fees because Consilium was not a party to the contracts and because the claim

against Consilium was brought in tort, not contract.[5]  Thus, the district court did not abuse its discretion by declining to award MHA attorneys' fees for Gresham's and Bowden's breach of contract.  *DP Sols.*, 353 F.3d at 433.

### 3. Gresham's Attorneys' Fees

Finally, MHA asserts that Gresham was not entitled to attorneys' fees under the Theft Liability Act.  Again, we disagree.

Texas courts have consistently held that a party who successfully defends a claim under the Theft Liability Act is a prevailing party, even if he loses on all other claims.  *Arrow Marble*, 441 S.W.3d at 705–06; *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 642 (Tex. App.—Dall. 2016, no pet.); *Moak v. Huff*, No. 04-11-00184-CV, 2012 WL 566140, at \*10–11 (Tex. App.—San Antonio Feb. 15, 2012, no pet.).  Because the Theft Liability Act says the prevailing party "shall" receive attorneys' fees, this award is mandatory.  *See* Tex. Civ. Prac. & Rem. Code § 134.005(b); *Bocquet*, 972 S.W.2d at 20.  Finally, MHA has not challenged the reasonableness of the award, so any argument that Gresham's award should be reduced is waived.  *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.").

For these reasons, the district court did not abuse its discretion in awarding attorneys' fees to Gresham as a prevailing party under the Theft Liability Act.  *See DP Sols.*, 353 F.3d at 433.

### F. Equitable Remedies

MHA claims that the district court erred by not granting its motion to amend the judgment to include (1) an injunction barring Bowden and Gresham from violating their contracts, (2) specific performance requiring Gresham to

---

[5] Consilium also claims that Tex. Bus. & Comm. Code § 15.51(a),(c) precludes the award of attorneys' fees on the breach of contract claims.  Because we affirm the district court on other grounds, we do not reach this alternative argument.

return proprietary information and fill out an affidavit that he has done so, and (3) equitable extension of both Bowden and Gresham's contracts.

This court reviews a district court's ruling on a Rule 59(e) motion for abuse of discretion, but questions of law are reviewed de novo. *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013). A Rule 59(e) motion to alter or amend a judgment "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotation omitted). It "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydrocChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

### 1. *Injunctive Relief*

Despite arguments to the contrary, MHA has failed to show that it is entitled to injunctive relief. To obtain permanent injunctive relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *ITT Educ. Servs., Inc. v. Acre*, 533 F.3d 342, 347 (5th Cir. 2008) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). However, some Texas courts have held that when a suit is to enforce a restrictive covenant, a party need not show irreparable injury. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Hous. [14th Dist.] 2000, pet. denied).

No. 16-10439

Although MHA requested injunctive relief in its pleadings and pre-trial order, MHA failed to make a showing of the requirements for a permanent injunction. *See ITT Educ. Servs.*, 533 F.3d at 347 (listing necessary elements for an injunction). Instead, MHA simply argued that it was entitled to a permanent injunction as a matter of law because its employment contracts granted it the right to injunctive relief. However, MHA cites no law for the proposition that a contract can automatically entitle a party to an injunction, without first demonstrating that an injunction is necessary.[6] Therefore, we agree with the district court that MHA failed to make the necessary showing for an injunction.

### 2. Specific Performance

MHA also sought specific performance requiring Gresham to return all computer files in its Rule 59(e) motion. Unlike its request for injunctive relief, MHA did not request specific performance in its pre-trial motion, even though it requested specific performance in its complaint. Its request for specific performance is therefore waived. *Cf. Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 554 (5th Cir. 1992) (stating that a claim or issue omitted from the pretrial order is waived even if contained in the complaint).

### 3. Equitable Estoppel

Finally, MHA requested that the district court extend Gresham's contract one year—and Bowden's two years—from the date of final judgment. Under Texas law, a district court may exercise its equitable power to craft an

---

[6] Moreover, MHA likely could not make such a showing because it sought monetary damages for all of the conduct for which it now requests an injunction. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004) ("For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages." (citing *Haq v. Am.'s Favorite Chicken Co.*, 921 S.W.2d 728, 730 (Tex. App.—Corpus Christi 1996, writ dism'd w.o.j.)).

injunction that extends beyond the expiration of the covenant not to compete. *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).

The district court entered its final judgment on January 30, 2015. More than two years have now passed, mooting MHA's appeal of this issue. *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Moreover, MHA has not demonstrated that equitable extension is warranted because Gresham no longer works for Consilium, and there has been no indication that Bowden has continued to violate the terms of his non-solicitation provision.

For these reasons, we affirm the district court's denial of equitable remedies.

## III.  CONCLUSION

Because there was insufficient evidence of malice, we VACATE the district court's award of exemplary damages. In all other respects, we AFFIRM the judgment of the district court.