# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-11469
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 20, 2018

Lyle W. Cayce
Clerk

NATIONAL URBAN LEAGUE, INCORPORATED,

      Plaintiff - Appellee

v.

URBAN LEAGUE OF GREATER DALLAS & NORTH CENTRAL TEXAS,
INCORPORATED,

      Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-3617

Before DAVIS, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:*

      Urban League of Greater Dallas & North Central Texas, Inc. ("Defendant") appeals a grant of summary judgment against it on National Urban League Inc.'s ("Plaintiff") claims for breach of contract and trademark infringement, and the denial of relief from that judgment. For the reasons set forth below, we AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-11469

## I. Background[1]

Plaintiff is a civil rights organization with affiliates across the country. To become affiliates, nonprofit organizations undergo rigorous screening and enter an agreement that requires compliance with the Terms of Affiliation; Affiliate Policies, Standards and Procedures Manual ("Affiliate Policies"); and Urban League Movement Mission Statement. The agreement allows affiliates to use the "Urban League" name and logo, which are registered trademarks owned by Plaintiff. An organization that violates the agreement and fails to cure the violations, however, risks losing its affiliate status, which entails no longer using the "Urban League" name or logo.

In early 2014, Plaintiff became aware that Defendant, an affiliate since 1967, was experiencing corporate governance issues. These included problems with properly invoicing for federal grant reimbursements, maintaining adequate financial records, and completing its yearly audit. In response, Plaintiff's staff, led by its Vice President of Affiliate Services, proposed corrective action in a written report of findings and provided on-site assistance to Defendant in Dallas. According to Plaintiff, Defendant did not implement any of the corrective actions.

Defendant's troubles continued. In September 2014, its CEO retired. Although it hired an interim CEO in October 2014, it terminated this individual in January 2015 only to rehire the same person two months later after several board members resigned in March 2015. Meanwhile, several funding sources suspended the affiliate's grants, including the United Way of Dallas, a state agency, and a federal agency.

---

[1] Where the parties disagree on the facts, the recitation here sets forth facts in the light most favorable to Defendant, the non-movant.

No. 17-11469

Plaintiff developed another corrective action plan in February 2015. The plan involved Defendant creating advisory and transition boards made up of certain specific individuals, using recommended volunteer accountants, and cutting staff and third-party services to reduce costs. According to Plaintiff, Defendant again did not implement any of the corrective actions.

In late March 2015, Plaintiff's Chief Executive Officer sent Defendant a "Notice of Default & Opportunity to Cure," notifying Defendant of specific violations causing it to be in material breach of the parties' affiliation agreement and, therefore, on "non-compliance status" and subject to disaffiliation. Several weeks later, in April 2015, Plaintiff's CEO sent Defendant a "Notice of Non Compliance," listing a number of violations that caused Defendant to be in non-compliance and stating that Plaintiff's management recommended disaffiliation. The notice also set a hearing at the national offices where the parties could "address these serious concerns."

After the hearing in early May, Plaintiff provided Defendant with another corrective action plan, which Defendant rejected. Plaintiff subsequently sent Defendant two more notices, in June and July, setting deadlines for Defendant to regain compliance, and then another notice after the second deadline passed stating that it was recommending disaffiliation to its board of trustees.

On July 23, 2015, Plaintiff sent a "Notice of Disaffiliation" to Defendant, informing it of the board's vote to disaffiliate and advising it to stop using the "Urban League" name and logo. Defendant appealed to Plaintiff's appeals committee, which affirmed the disaffiliation, concluding that Defendant had violated the parties' affiliation agreement by, inter alia, failing to pay affiliate dues and prepare required financial reports.

In November 2015, Plaintiff filed the instant lawsuit, alleging that Defendant was still using the "Urban League" name and logo despite being

3

disaffiliated.    It alleged breach of contract, trademark infringement and dilution under federal and state law, and unfair competition under federal and state law.   The district court granted summary judgment on the breach of contract, trademark infringement, and unfair competition claims; it dismissed the dilution claims, which Plaintiff said it would withdraw if it won summary judgment on the other claims.

Defendant subsequently moved for reconsideration under Federal Rule of Civil Procedure 60(b), and the district court denied the motion.  The district court granted Plaintiff's request for contract damages and a permanent injunction prohibiting Defendant from using the "Urban League" name and logo.  Defendant timely appealed.

## II.  Discussion

### A.  Rule 60(b) Motion and Summary Judgment

Defendant argues the district court abused its discretion by denying its Rule 60(b) motion seeking relief from the grant of summary judgment against it.  It argues summary judgment was improper because the evidence raised a material fact issue as to whether Plaintiff failed to follow the proper procedure for discontinuing the parties' affiliation and, therefore, whether Defendant was still entitled to use the "Urban League" name and logo.[2]

Under the Affiliate Policies, before taking disciplinary action for compliance failures, Plaintiff's Department of Affiliate Services ordinarily

---

[2] We review the denial of a Rule 60(b) motion for abuse of discretion and a grant of summary judgment de novo.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 997 (5th Cir. 2001); *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997).  To prevail on its breach of contract claim, Plaintiff had to show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Here, the parties only dispute the second element.

4

must notify an affiliate of the failures with a "Notice of Noncompliance." Defendant argues that Plaintiff violated this policy because Plaintiff's CEO initially sent a "Notice of Default & Opportunity to Cure," and therefore the notice lacked the proper title and was sent from the wrong person.[3] The undisputed evidence shows otherwise.

The Affiliate Policies state that "[t]he procedure by which affiliates who are out of compliance are brought back into compliance shall remain sufficiently flexible to accommodate the various facts and circumstances." Serious corporate governance issues would justify Plaintiff's decision to have its CEO, rather than a departmental executive, send notice of noncompliance, especially where an affiliate has already failed to comply with corrective action measures proposed by Plaintiff's Vice President of Affiliate Services. The notice, though titled "Notice of Default & Opportunity to Cure," informed Defendant that it was on "non-compliance status" and listed specific compliance problems and steps required to resolve them. The minor discrepancy in the notice's title is, therefore, at best a "scintilla of evidence," which is not enough to create a genuine issue of material fact as to whether Plaintiff followed the "flexible" disaffiliation procedure established in the Affiliate Policies. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (internal quotation marks omitted). This is

---

[3] Defendant also argues Plaintiff gave the initial notice to the media as a "punitive" measure. Insofar as Defendant argues that such action violated the Affiliate Policies because it was "disciplinary action" that Plaintiff took without first providing a reasonable opportunity to cure the compliance problems, this argument also fails. As the district court concluded, Defendant has not identified competent evidence supporting its claim that Plaintiff provided the notice to the news media, relying instead on the existence of a news story that does not identify the story's source. Moreover, "beyond a conclusory assertion," Defendant "makes no argument and cites no authority" for its assertion that such action counts as the type of "disciplinary action" contemplated by the Affiliate Policies; it has therefore waived this argument due to inadequate briefing. *See SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 778 n.7 (5th Cir. 2017).

particularly true here, given that Plaintiff sent two other notices titled "Notice of Non Compliance," which gave Defendant further opportunity to avoid disaffiliation.

Defendant also argues Plaintiff improperly disaffiliated it without providing evidence that Plaintiff's board of trustees voted to disaffiliate. This argument lacks merit. The Affiliate Policies require only that Plaintiff notify an affiliate when the board has decided to disaffiliate, which Plaintiff did. The "Notice of Disaffiliation" states that the board approved a resolution authorizing disaffiliation, and Plaintiff provided an affidavit from its Vice President of Affiliate Services stating that the vote occurred, as well as a dated copy of the resolution. This evidence is sufficient to persuade a reasonable fact-finder that the vote occurred, and Defendant has identified no evidence creating a genuine dispute of material fact on the issue. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

Defendant's argument that Plaintiff admitted in its complaint to withholding $200,000 from Defendant also lacks merit. Plaintiff alleged in its complaint that while visiting the Defendant's office, it uncovered "$200,000 in payable expenses for which no invoice for payment had been sent" by the affiliate. That statement is not an admission that Plaintiff owes funds to Defendant but, rather, an allegation that the affiliate failed to properly seek reimbursement for reimbursable expenses.

As Defendant has not raised any genuine issues of material fact as to whether Plaintiff breached the parties' affiliation agreement, it has not shown that summary judgment was improperly granted and, therefore, the district court did not abuse its discretion in denying Defendant's Rule 60(b) motion seeking relief from the judgment.

## B.  Scope of the Injunction

Defendant next argues that, even if summary judgment was proper, the district court's injunction is overbroad because it enjoins Defendant from using "Urban League" in its corporate name for state registration purposes, as opposed to only enjoining use of it in Defendant's "trade name."[4]  We review the grant of a permanent injunction for abuse of discretion.  *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 279 (5th Cir. 2002).

The Terms of Affiliation state that "[i]n the event of disaffiliation, the former [a]ffiliate shall promptly cease to use in any way the phrase 'Urban League' or brand service logo as part of its name or in connection with its operation."  Defendant admitted below, and does not dispute on appeal, that the parties' agreement bars use of Plaintiff's trademarks after proper disaffiliation.  The district court did not abuse its discretion in issuing an injunction that enforces the parties' agreement.[5]  *See ITT Educ. Servs. v. Arce*, 533 F.3d 342, 344, 348–49 (5th Cir. 2008).

## C.  Protective Order

Defendant lastly argues the district court abused its discretion in denying its motion for a protective order and to quash notices of depositions. "[A] district court's discretion in discovery matters will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)).

---

[4] Defendant is presently doing business as Urban Community Center.

[5] Defendant's reliance on *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997), is inapt.  In that case, we rejected a trademark dilution claim that sought to enjoin a party from using its own registered trademark.  *See Exxon*, 109 F.3d at 1084.  Here, Defendant does not contend that it ever registered the "Urban League" name as owner of that trademark.

## No. 17-11469

Defendant filed the motion at 7:30 p.m. the day before the scheduled deposition of Defendant's chairman, Edward R. Smith Jr., and two days before a scheduled Rule 30(b)(6)[6] deposition. Defendant claimed that Smith could not make the deposition because he was attending a funeral the day before. It also said it did not have a corporate representative who could testify to the proposed Rule 30(b)(6) topics and objected to those topics on various grounds. Defendant provided no explanation for why Smith could not arrange his travel plans to attend the deposition, given that he had ample notice of it, the funeral was the day before the deposition, and Plaintiff agreed to delay the deposition from the morning until the afternoon to allow for travel. Defendant also did not explain why it waited to object to the Rule 30(b)(6) topics until two days before the deposition was to occur. We conclude that the district court did not abuse its discretion in denying the motion. *See Marathon*, 591 F.3d at 469; *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (explaining that the burden is on the party seeking a protective order "to show the necessity of its issuance" (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).

AFFIRMED.

---

[6] *See* FED. R. CIV. P. 30(b)(6).